JOHNSON, APPELLANT, *v.* THE PURITAN MINING COMPANY, ET AL., RESPONDENTS, and MURRAY, APPELLANT.

[Submitted November 19, 1896. Decided December 14, 1896.]

MECHANIC'S LIEN—*Appeal—Service of Notice as Between Defendants—Jurisdiction.*— Where in a lien foreclosure the defendants, some of whom claimed under a prior mortgage and one under a prior judgment lien, united in the defense, all being represented by the same counsel, and on the trial the mortgagee defendants prevailed while the judgment defendant was defeated, and on an appeal by the plaintiff and the unsuccessful defendant the original counsel for the defendants who represented them below again appeared insisting that there was still no conflict of interests between their clients, while new counsel then appearing for the mortgagee defendants for the first time insisted that there was a conflict of interests and objected to the jurisdiction of the appellate court because no notice of appeal was served on the

mortgagee defendants by their co-defendant, the supreme court will, under such circumstances, entertain jurisdiction of the appeal and provide for a determination of the rights of the mortgagee defendants so far as they may be affected by a reversal on their co-defendants appeal.

SAME—*Priorities—Mining Claims.*—Under section 1374, Fifth Division of the Compiled Statutes extending a lien for labor and materials to the land upon which the building or improvement is situated and giving it precedence over any mortgage made subsequent to the commencement of the work, and section 1376, *Id.*, providing that the lien shall attach to the improvement in preference to any prior mortgage on the land and permitting the enforcement of the lien by the sale of the improvement under execution and its removal within a reasonable time, the lien of a mechanic as to the improvement is superior to a prior mortgage on the land, but as to the land itself the prior mortgage maintains precedence, and therefore, where a lien claimant has not erected a building or placed such an improvement upon a mining claim, as is susceptible of severance or removal, his lien must yield to a prior mortgage upon the premises.

SAME—*Judgment Roll—Evidence—Verification of Pleading.*—Verification is not necessary to vest jurisdiction, and therefore where one of the defendants in a lien foreclosure relied upon a judgment lien as prior to the plaintiff's lien it was error to exclude the judgment roll in the action wherein he recovered the judgment merely because the complaint was not verified.

SAME—*Evidence—Ownership of Judgment.*—In a mechanic's lien foreclosure where one of the defendants relied upon a judgment lien as prior to the plaintiff's lien and an execution had been issued on motion after five years from entry of his judgment, it was error to exclude the judgment roll, execution, motion papers and sheriff's deed on the ground that the said defendant was not the owner of the judgment at the time the motion for execution was made, since as the judgment debtor had raised no objection to the issuance of the execution and as it had been issued in the name of the party in whose favor it was rendered, the ownership of the judgment was of no concern to the plaintiff.

*Appeal from Third Judicial District, Granite County.*

FORECLOSURE of mechanic's lien.   Judgment was rendered for the defendant mortgagees by BRANTLEY, J.   Affirmed on plaintiff's appeal and reversed on appeal of defendant Murray.

Statement of the case by the justice delivering the opinion.

Levi C. Johnson, plaintiff in this action, alleged fifty-seven causes of action upon liens for materials furnished to the Puritan Mining and Milling Company, defendant, or for labor performed upon the mines of said company.   The times within which the materials were furnished and the labor performed in all of the causes of action set forth are between September 1893 and March 1894.   The plaintiff prayed for judgment against the Puritan Mining and Milling Co., and that the same be declared a lien on said mining claims and that they be sold to satisfy the judgment.

Defendants Hines and wife, Lynch, and the executor of Mary Minuse, answered and denied the several causes of action set up in plaintiff's complaint and pleaded that they were the owners of a mortgage made to them upon the claims of the Puritan Mining and Milling Company on May 21st, 1892, to secure certain debts of the corporation. The defendant King also claims to be the owner of a mortgage upon the same mining claims, executed on May 15th, 1893. King's mortgage recognizes the former one to Hines, Lynch, et al., so there is no conflict between the interests of these mortgagees.

The contention of the mortgagees was that by virtue of the mortgages their liens were prior to the plaintiff's. The defendant Murray claimed a one-fifth interest in the mining claims of the Puritan Mining Company by reason of his being the judgment creditor of one John Ullery, the predecessor in interest of the defendant Puritan Mining and Milling Company. He pleaded that his judgment lien existed by virtue of a judgment obtained in a suit of *Murray* v. *Ullery* wherein he recovered judgment in December, 1887 against Ullery for the sum of $2,062.81, together with interest and costs, and that on June 29th, 1893, under his execution issued upon said judgment, the sheriff sold a one-fifth interest in the mining claims involved in this suit, to him, Murray, and thereafter on December 30th, 1893, the sheriff executed to him a sheriff's deed. By reason of these facts Murray asserted that his interest in said mining claims was prior and superior to plaintiff's lien.

The plaintiff filed no replication to the answers of the mortgagees, but did reply to Murray's answer denying the averments of the same.

Upon the trial it was agreed by all parties that the materials were furnished and the labor was performed as alleged in the complaint. Murray then offered in evidence the judgment roll in the case of *Murray* v. *Ullery*, filed December 7, 1887, the motion and affidavit for execution, the execution issued on said judgment May 1st, 1893, and the deed from the sheriff to J. A. Murray, conveying to Murray the interest of Ullery in

the mining claims described in the complaint, filed for record January 4th, 1894. The plaintiff objected to the admission of the judgment roll, motion, execution and sheriff's deed on the ground that the complaint in said judgment roll was not verified, and because it appeared from the papers introduced that J. A. Murray was not the owner of said judgment against Ullery at the time the motion and affidavit for execution were made and filed. The court sustained the plaintiff's objection. Judgment was thereafter rendered in favor of plaintiff for $8,134.04 and costs including attorney's fees, which said sums were adjudged to be liens upon the Puritan and Silver Star mining claims, the properties of the Puritan Mining and Milling Company; but the court decreed that the defendants mortgagees, by virtue of their mortgages, had prior and superior liens to those of plaintiff's. It was also decreed that the defendant Murray had no lien and could take nothing of the action.

*H. R. Whitehill,* for Appellant.

The lien given under the Montana statute, upon a mining claim or quartz lode, the improvements being incapable of segregation, is upon the mine itself and is given preference to any prior lien, incumbrance, or mortgage upon the land upon which any buildings, structures, or improvements are erected.

In every case, yet decided by the courts, in which the question has been raised as to the validity of the lien upon the mine itself, instead of the improvements, it has been held that the lien, if it exists at all, extends to the whole claim. The mine, or shafts, stopes, levels and other openings and workings for the development of a quartz lode within a mining claim, is a structure, or improvement, within the meaning of the statute. (*Alvord* v. *Hendrie,* 2 Mont. 115; *Smith* v. *Sherman Mining Co.,* 12 Mont. 529; *Helm* v. *Chapman,* 66 Cal. 292; *Sylvester* v. *Coe Quartz Mining Co.,* 80 Cal. 510.)

The priority as between such liens and prior incumbrances depends wholly upon the statutes of the different states. (*Davis* v. *Bisland,* 18 Wall 659; *Cheshire Prov. Inst.* v.

*Stone,* 52 N. H. 365; *Shepardson* v. *Johnson,* 60 Iowa 239; *Chadbourn* v. *Williams,* 71 N. C. 450; *Mellon* v. *Valentine,* 3 Col. 258.)

As to the statutes of Colorado, Idaho, Nevada, New Mexico and Washington, see II Jones on Liens, §§ 1191, 1198, 1214, 1217, 1230.

·This court in the case of the *Grand Opera House* v. *Maguire,* 14 Mont. 558, in construing § 1376 of the Montana statute, has decided that a mechanic's lien, in so far as the improvements are concerned, takes precedence over a mortgage upon the land, which was made and recorded prior to the commencement of the building. It has also been decided in other cases that the lien has preference over a mortgage made and recorded prior to the commencement of the delivery of materials and the commencement of the work for which the lien was claimed, though the building had been commenced at a date prior to the commencement of the lienor's claim on a different contract, and this for the reason that a purchaser ought not to have the benefit of labor and materials which give the property its existence and value. ·(*Mason* v. *Germaine,* 1 Mont. 263; *Merrigan* v. *English,* 9 Mont. 113; *Davis* v. *Bisland,* 18 Wall 659.) § 1376 of the Montana Code having displaced and postponed the prior liens of mortgages and other incumbrances upon the land to the subsequent liens for materials and labor used in making improvements, the priorities of such conflicting liens are not governed by the principle in equity, *qui prior est tempore, potior est jure,* but by the statute alone. (*Gallatin County* v. *Beatty,* 3 Mont. 173; *Williams* v. *Santa Clara Mining Association,* 66 Cal. 193; *Hall* v. *Hinckley,* 32 Wis. 362; *Meyer* v. *Delaware R. R. Co.,* 100 U. S. 457.)

In the state of Iowa a mechanic's lien has preference over a prior recorded mortgage. The statute authorizing such preference is almost identical with § 1376 of the Montana Code, and it is submitted that the Iowa decisions are conclusive of the question here presented. (*Brooks* v. *Burlington R. R. Co.,* 101 U. S. 443; *Stockwell* v. *Carpenter,* 27 Iowa 119;

*Getchell* v. *Allen,* 34 Iowa 559; *O'Brien* v. *Pettis,* 42 Iowa 293; *Bear* v. *Burlington R. R. Co.,* 48 Iowa 619; *Taylor* v. *Burlington, Etc., R. R. Co.,* 4 Dill. 570.)

*Smith and Word,* for appellant Murray.

I.   The court below erred in holding that the judgment roll in the case of *Murray* v. *Ullery* was not admissible in evidence because the complaint was not verified.   The verification is no part of a pleading and is not necessary to give the court jurisdiction.   (Bliss on Code Pleading § 173, note; Boone on Code Pleading, §§ 34, 81, note 22; Maxwell on Code Pleading, pages 563-4; Baylies' Code Pleading, page 310; Van Fleet on Collateral Attack, §§ 251-5; *Johnson* v. *Jones,* 2 Neb. 126, 138; *Trumble* v. *Williams,* 18 Neb. 144; 24, N. W. 716, 718; *George* v. *McAvoy,* 6 How. Pr., 200; *Bank* v. *Shaw,* 5 Hun. 114; *McCraney* v. *McCraney,* 5 Ia. 232, 254; *Rush* v. *Rush,* 46 Ia. 648; *Castleman* v. *Relfe,* 50 Mo. 583; *Patterson* v. *Ely,* 19 Cal. 28.)

Where objection is not made until after judgment the defect is waived.   *(Dorrington* v. *Meyer,* 8 Neb. 214; *Haywand* v. *Grant,* 13 Minn. 165; *Schwarz* v. *Oppold,* 74 N. Y. 307; *Harris* v. *Ray,* 15 B. Mont 630; *Wilkin* v. *Gilman,* 13 How. Pr. 225; *Bragg* v. *Bickford,* 4 How. Pr. 21.)

II.   At the trial the plaintiff objected to the admission in evidence in the appellant Murray's behalf of the motion and affidavit for execution, execution and sheriff's deed, on the ground that it appeared from the papers introduced that said Murray was not the owner of the judgment at the time the motion was made and affidavit filed.   This objection was not well taken.   More than five years having elapsed from the entry of the judgment the execution, as the record shows, and the statute required, issued upon the motion and affidavit of Murray, and after personal notice to Ullery.   (Code Civil Procedure, § 349.) (1887.)   The court made an order that execution issue.   This order for execution was appealable. (*N. P. R. R. Co.* v. *Bender,* 13 Mont. 432.)   The record nowhere shows that this order was ever appealed from.   The

execution could issue only in the name of the party who re-
covered the judgment, for if otherwise issued, the execution
would not be following the judgment and could not therefore
be warranted by it.    (C. C. P. § 312 (1887); *Corriell* v. *Doo-
little*, 2 G. Green (Ia.) 387; *Collins* v. *Smith*, 75 Wis. 395;
Freeman on Executions § 21.)    As regards strangers and in
collateral attacks like the present based upon matter *dehors*
the record, the judgment of the court ordering execution to
issue and all proceedings had thereunder will be deemed valid
for all purposes.    (*Edgerton* v. *Edgerton*, 12 Mont. 122, 149;
*Vantleberg* v. *Black*, 2 Mont. 371; *Wells, Fargo & Co.* v.
*Clarkson*, 5 Mont. 336; *Morrill* v. *Morrill*, 25 Pac. 362; Van
Fleet on Collateral Attack, § 16; Alderson on Judicial Writs,
§ 14.)

*Durfee & Brown* and *McConnell & McConnell*, for Re-
spondents.

I.    The interest of Murray and the mortgagees manifestly
conflict.    Both mortgages cover the whole of the Puritan lode
and four-fifths of the Silver Star.    And the Hynes mortgage
provides for the acquisition of the other firth, if it could be
done.    To give this court jurisdiction of any party who is ad-
versely interested, even if he is a co-defendant, notice of ap-
peal must be served on him.    And this court cannot reverse
or modify the judgment so as to affect the rights of the party
not served with the notice.    (Hayne on New Trial and Appeal,
pages 629-630; *Senter* v. *DeBernal*, 38 Cal. 640; *Thompson*
v. *Ellsworth*, 1 Barb. Ch. R., 627; *Williams* v. *S. C. Min-
ing Association*, 66 Cal. 195; *Randall* v. *Hunter*, 69 Cal. 82;
*Milikin* v. *Houghton*, 75 Cal. 540; *O'Kane* v. *Daly*, 63 Cal.
317.)

II.    The question in this case is controlled by §§ 1370,
1374, 1375, 1376.    We understand § 1376 applies to a min-
ing claim as well as to any other kind of land.    The statutes
do not anywhere undertake to give precedence to these liens
to the land upon which the improvements were made over that
created by a mortgage duly executed before the commence-

ment of work.    This preference is confined to the buildings, erections and improvements put upon the land by the lienors. That it was never intended to interfere with the lien of the mortgage upon the land is shown by the fact that the purchaser at the foreclosure sale of the lienor for materials or labor has the right to remove the building, erection or improvement within a reasonable time.    The meaning of these statutes is settled by the cases of *Davis* v. *Alvord*, 94 U. S. 545 and *Grand Opera House* v. *Maguire*, 14 Mont. 558. Plaintiff has not shown the erection of a single building or other improvements upon the mining claims against which he claims his lien.    If a mill, hoist or other improvement capable of being severed from the mining claims had been put there by the material furnished or the labor done by the plaintiff, then he would undoubtedly have the right, under § 1376, to have a decree to sell the same together with the equity of the owner in the claims themselves.    The fact that the labor may have been done in sinking shafts, running levels, or tunnels, which are incapable of being removed, cannot change the plain mandate of the statute.    Such lienors get the benefit of such improvements in the sale of the equity of the owner in the claim itself whose value is enhanced thereby.    When the work done is incapable of severance, such as stoping ore on a mining claim, or digging a well on any kind of land, no special lien is created upon such improvements as distinguished from the realty itself, to which a preference will be given over a pre-existing mortgage.    (*Montana L. & M. Co.* v. *Obelisk M. & M. Co.*, 15 Mont. 20.)    The rights of the mortgagee are paramount to those of the mechanic where the mortgage attaches before the house was erected, altered or repaired. (15 Am. & Eng. Ency. of law, page 88, note 1, where 55 cases from 19 states are collected.)    It is true, as contended, that the courts hold a lien on a mining claim for materials and labor extends to the whole claim, and is not limited to a specific amount of the realty upon which the improvement is made.    But this does not give such liens the preference over pre-existing liens by mortgage or judgment, etc.    (*Smith* v.

*Sherman Mining Company*, 12 Mont. 529; *Grand Opera House Co.* v. *Maguire, supra.*)

HUNT, J.—The only question to consider on the plaintiff's appeal is the specific error that the court ought not to have decreed the mortgage liens of the defendants to be superior to the liens of the plaintiff for materials furnished and labor done upon the mining claims of the Puritan Mining and Milling Company.

Section 1370 of the Compiled Laws of 1887 gives a lien to every laborer or other person who does any work and labor upon, or furnishes any material for, any mining claim, quartz lode, building, erection, etc.

Section 1374 provides that the lien given by section 1370 shall extend to the lot or land upon which any such building, improvement or structure as may be referred to in the aforesaid section, is situated; and provides further that the liens for work or labor done, or material furnished, as specified in the chapter of the statutes referring to liens, shall be prior to and have precedence over any mortgage, incumbrance or other lien made subsequent to the commencement of work on any contract for the erection of such building, structure or other improvement.

Section 1375 declares that any such lien shall extend to all the right, title and interest owned in the land by the owner or proprietor of the building, erection or other improvement for whose immediate benefit the labor was done or the materials were furnished.

Section 1376 provides that such liens or work "shall attach to the buildings, or improvements or erections for which they were furnished, or the work was done, in preference to any prior lien, or incumbrance or mortgage upon the land upon which said buildings, erections or improvements have been erected or put; and any person enforcing such lien may have such building, erection or improvement sold under execution and the purchaser may remove the same within a reasonable time thereafter."

As we must be governed by the foregoing statutes, we shall be careful not to extend the law beyond the expressed intent of the Legislature.

Granting that section 1376 is applicable to mining claims, still we cannot find that it or any other statute gives precedence to liens, such as are involved in this action, upon land upon which the improvements have been made over liens created by mortgages duly executed before the commencement of the work.   The statute does make such liens preferred to any prior lien upon the land by attaching them to the *buildings, erections or improvements* for which the labor and materials were furnished, but clearly goes no farther.   We find no warrant in the language used to imply that it extends such lien to the land itself, while as conclusive evidence that the construction we put upon the statute is accurate, it is provided that the person enforcing the lien may have "such building, erection or improvement sold under execution and the purchaser may remove the same within a reasonable time thereafter."

We are cited by the appellant to the statutes of Iowa, which are substantially like those that obtained in Montana when plaintiff's cause of action accrued.   But we find that the U. S. Supreme Court in *Brooks* v. *Railway Co.*, 101 U. S. 443, has construed the Iowa statutes similar to sections 1374, 1375 and 1376, cited above, and decided that a provision like section 1374 relating to the *land* on which the improvement is made, gives the laborer a paramount lien only as against other liens and incumbrances created subsequent to the commencement of work on any contract for the erection of such building, structure or other improvement, and that those made *prior* to that time were unaffected by it.   But the court goes on to say that a section of the Iowa Code like section 1376 of the Montana Code, made a different provision in regard to the lien on the building, erection and improvement on the land, and thus summed up the statutory law:

"The mechanic, therefore, has a lien upon the *land* paramount to all rights accruing after the commencement of his

work, and what he puts upon the land paramount to all other claims, whether created before or after that time. The decisions of the courts of Iowa are to this effect and the proposition is not disputed in argument here.''

This was the view taken of the statutes in *Grand Opera House* v. *Maguire*, 14 Mont. 558, where Justice Harwood, speaking for the court, said:

''This provision (§ 1376) subjects the improvements to the claim of the lienor to secure payment for the labor or material used in the erection of the improvement, by right superior to that of the prior mortgagee.'' (See also *L. & M. Co.* v. *Mining Co.*, 15 Mont. 24 and *Murray* v. *Swanson*, 18 Mont. 533.)

The Montana statutes in thus giving a lien upon a building or improvement separate from the land in preference to all prior liens upon the land, and by permitting the enforcement of such a lien by sale and removal of the building or improvement, seem to wipe out the common law rule that buildings attached to the real estate are part of the real estate, not to be severed without permission of prior mortgagees of the land. Commenting upon such statutes Jones on Mechanic's liens, § 1373, says:

''A lien is given, not on the materials as such, but on the buildings or improvements in the construction of which the materials are used. The operation of the statute, in case there is a prior mortgage of the land, is to dissever the improvements from the realty by giving a superior lien on such improvements, and conferring on the purchaser the right to remove them.''

Now to apply these controlling rules. Plaintiff has not proved that he has erected a building or structure, or put any other improvement upon the mining claims susceptible of severance and removal. He relies solely upon the contention that, where the improvements are incapable of segregation, the lien is upon the mine itself, and is to be preferred to any prior lien, incumbrance or mortgage upon the land on which the buildings, structures or improvements are erected. But

we think plaintiff is in error in his construction of the statutes. Many improvements, buildings or erections placed upon mining claims may be removed from the land itself. There are mills, hoists, pumps, sheds and other improvements upon which labor may have been done. For all such improvements the liens of the laborers attach to the buildings or improvements in preference to any prior lien, incumbrance or mortgage, and they may be sold and removed. But where the improvement into which the materials or labor went cannot be removed from the land and sold, the statute in such case has not provided for any preference over a pre-existing mortgage, but rather by clear implication declared otherwise. (*Getchell* v. *Allen*, 34 Iowa 559.) It is impossible, for instance, to separate a shaft in a mine from the mining claim upon which it is sunk. The lien in such a case attaches to the land, and the law recognizes that the lienor derives the benefit of such improvement by the enhanced value of the property, but his lien is subsequent to a pre-existing mortgage. (*Montana L. & M. Co.* v. *Mining Co.*, 15 Mont. 24; *Alvora* v. *Hendrie*, 94 U. S. 545; *Conrad and Ewinger* v. *Starr*, 50 Iowa 470.)

Whether or not a lien for labor or materials furnished on a mining claim extends to the whole claim or only to that part of the realty upon which the improvement is made is not important in this case, because, conceding the truth of that proposition which is laid down in *Smith* v. *Sherman Mining Co.*, 12 Mont. 524, it does not follow at all that any such lien is to be preferred to the pre-existing lien of a judgment or mortgage.

In conclusion we think that the court correctly fixed the relation of the mortgage liens in the case by awarding them priority over the plaintiff's liens, and in this respect the judgment must be affirmed.

The legal question raised by Murray's appeal is whether or not the district court was correct in ordering that Murray take nothing of the action and that he have no lien on the property.

To the brief of Murray's counsel, and to the authorities

cited to the effect that the court did err in ruling adversely to
Murray, no brief has been filed by either plaintiff or the
mortgagee defendants. The mortgagees, however, (except
the administrator of the estate of Mary Minuse) did file a
brief, contending that Murray's position is adverse to the
mortgagees, and that this court has no jurisdiction over the
mortgagees' rights so far as they may be affected by any
judgment of reversal of the district court's order, because no
notice of appeal was ever served upon the mortgagees by ap-
pellant Murray. The facts are that when the case was tried
in the district court Messrs. Durfee & Brown and Smith &
Word appeared as counsel of record for all the defendants,
and the names of Durfee & Brown appear as having subscribed
every answer filed. Throughout the trial no effort was made
by the mortgagees to exclude any evidence offered by appel-
lant Murray. On the contrary, all the defendants being rep-
resented by the same counsel, their rights were evidently
recognized and understood as between themselves, and were
adverse only to the plaintiff—who claimed priority to them
all. It was the plaintiff alone who objected to the evidence of
Murray's judgment against Ullery, and it was plaintiff's ob-
jection only which the court passed upon when it sustained
that objection. It was never assumed on the trial, nor does
it appear to us under the pleadings or proceedings had, that
there is any necessary conflict between the interests of the
mortgagees and Murray, and we cannot assume that the coun-
sel for the defendants took the position they did, except with
due regard to the wishes and interests of their several clients.

When Murray appealed it was by the same counsel who had
represented him and his co-defendants on the trial. One of
the said counsel, Mr. Word, argued Murray's appeal to the
supreme court. D. M. Durfee, Esq., another of defendants'
counsel, argued the appeal in behalf of the mortgagee de-
fendants before this court, and stated at the close of the argu-
ments that he did not contest the appeal of Murray and did
not wish to be understood as doing so for his clients. But
Messrs. McConnell & McConnell, who first appear in the case

in this court and who alone are contesting Murray's appeal, state that they are employed by all the mortgagees (except the Minuse estate) to maintain the integrity of the judgment as to them against all parties thereto who seek to disturb it by appeal. The attitude of the several defendants, therefore, is this in the supreme court: The defendants all made a common and friendly fight against plaintiff in the district court. Some of them prevailed—one alone did not. Plaintiff, by his counsel, and the unsuccessful defendant by the same counsel who had appeared for all defendants, appeal. In the supreme court, in addition to the original counsel of defendants who resist plaintiff's appeal only and contend for Murray's rights against plaintiff alone, new counsel appear for the mortgagees. The original counsel still say there is no hostility of interests between any of their clients—the one appealing and those simply responding to plaintiff's appeal. But the additional counsel for the respondent defendants say to us there is a conflict of interests between defendants and object to the jurisdiction of this court. Now if this court is obliged to elect between these discordant contentions and to decide that it has no jurisdiction over the mortgagees so far as they are affected by Murray's appeal, it would do Murray's rights—if any he has—grave wrong and must needs do so too in the teeth of the statements of the original counsel of all the defendants, that they, the defendants, are not in conflict on this appeal between themselves. Obviously, the mortgagee defendants who are still represented by the same counsel who tried their case for them in the lower court, should not be heard to say in this appeal through the mouths of those attorneys familiar with their case from its inception that they were not and are not in a position adverse to their co-defendant appellant, yet to stultify themselves through other counsel by contending that there is a conflict. We would not listen to such a position if advanced by the original counsel and we regard it as none the less unsound because advanced by the learned counsel who now first appear for the mortgagees. Besides, to uphold the mortgagees as against Murray would necessarily impute to

their senior counsel inexcusable error or gross perfidy of their clients' interests. We decline to do this in the absence of a clear showing. Nor should a court tolerate such a shifting of attitudes. Where litigants recognize the equities of one another by uniting to resist the demands of a common enemy, and all are legally entitled to succeed, yet through error one is denied all rights and appeals, we will not sustain the one and dismiss the other merely because the district court erroneously excluded the latter from participating in the fruits of the victory which he helped to gain and which was awarded his co-defendants.

The circumstances of this case make it easily distinguishable from *Trader's Bank* v. *Boken*, 5 Wash. 777, cited by counsel for the mortgagees resisting Murray's claims. There it did not appear that all the parties defendant made a common defense in the court below, or that there was a common interest between them; nor were all the defendants before the supreme court by the same counsel who had represented them in the lower court. That decision is, therefore inapplicable. We believe we have jurisdiction and so hold.

Reverting to the rulings of the court, we think it was error to exclude the judgment roll in the case of *Murray* v. *Ullery* offered in evidence by Murray on the trial. The judgment roll in that case shows that the action was on a promissory note; that the complaint was filed; that summons was duly issued and properly served, and that after the statutory time for answering or pleading had elapsed the default of defendant was entered and judgment rendered for the plaintiff as prayed for in his complaint. The complaint lacked any verification and for this reason the district court rejected the evidence. The object of the verification of the complaint is to insure good faith in the averments of the plaintiff. (*Patterson* v. *Ely*, 19 Cal. 28.) The latest writer on Code Pleading, Phillips, § 224, says:

"With the view to secure good faith and truthfulness in pleading, to confine litigation to matters really in dispute, and to avoid frivolous and false issues, nearly all the codes require

pleadings of fact to be verified upon oath.   By thus requiring parties to sustain their statements and denials by affidavits of their truthfulness, facts not believed to be true will seldom be alleged on the one hand, and alleged facts believed to be true will seldom be denied on the other hand, and the judicial controversy will thus be limited to such statements and denials as the parties are willing to swear to.''

It is also held that the verification is not a part of the pleadings, strictly speaking, and is not necessary to vest jurisdiction.   ''Like any other formal matter, its absence is waived by a failure to object.   And if its entire absence does not affect the jurisdiction, of course mere defects cannot.''   (Van Fleet's Collateral Attack, § 251.   See also Baylies' Code Pleading, page 310; Phillips' Code Pleading, § 225; Bliss on Code Pleading, § 173.)

Maxwell on Code Pleading, page 563, says (as does § 80 of the Montana Code Civil Procedure, 1887) that jurisdiction attaches to the defendant when he is legally served with summons, regardless of the defects in the petition or verification, and that the omission of the verification ''amounts to one of those irregularities which cannot be collaterally called into question.''   (See also Boone cn Code Pleading, §§ 34 and 81.)

The Montana Code—§ 81 Code Civil Procedure, 1887; § 660 Code Civil Procedure, 1895—defines pleadings as ''the formal allegations by the parties of their respective claims and defenses for the judgment of the court.''   It also specifies what the complaint must contain as its allegations; and although the complaint, when made up of such formal allegations, must be verified, the verification is not really a part of any formal allegation of a claim by a party for the judgment of the court.   It is an oath of the good faith of the complainant in making his averments, but of itself does not tender an issue or add an allegation to the pleadings.   Such we take it is the reason of the texts of the authors referred to, which commend themselves to us.

The district court sustained the plaintiff's objection to the admission in evidence on Murray's behalf of the judgment roll,

motion and affidavit for execution, the execution and sheriff's deed, on the further ground that it appeared from the papers introduced that Murray was not the owner of the judgment "at the time the motion for execution was made" etc. This appears to have been error. More than five years had elapsed from the date of the entry of the judgment. The execution was issued upon the motion and affidavit of Murray, and after personal notice to the original defendant John Ullery. The exact date of the filing of the motion and affidavit does not appear, but they were served on the 13th of April, 1893. These proceedings were had in accordance with section 349 of the Code Civil Procedure Compiled Statutes 1887, *and were not objected to by Ullery.* (*N. P. R. R.* v. *Bender*, 13 Mont. 432.) The execution issued in obedience to the order of the court, made April 29th, 1893. The plaintiff introduced an assignment of the judgment by Murray to Frank E. Corbett, dated May 20th, 1892. But in the transcript of the judgment docket, which appears to have been offered in evidence in the case, there is a recital of a reassignment of the judgment to Murray by Corbett, April 10th, 1893, prior to the issuance of the execution, which was May 1st, 1893. By this evidence it would appear, therefore, as if Murray were presumptively the owner of the judgment at the date of the execution.

But the question of ownership is a matter of no importance on this appeal, because the plaintiff, who alone raised that question on the trial, does not ask for its determination, and in his argument and brief relies on but the one specification of error, namely, the ruling of the court declaring plaintiff's lien inferior to the mortgagees'. We understand his position to be that if his lien is not good against the mortgagees he cannot insist that it be held prior to the judgment lien, hence the ownership of the judgment is immaterial to him.

If the judgment debtor had any reason to show why execution ought not to have issued against him, he had an opportunity to appear after he was served with a copy of the motion and the affidavit for execution. Can this plaintiff now take

advantage of any defect in the proceedings had upon the judgment obtained by Murray against Ullery except by a direct proceeding, or can the judgment defendant alone do so? (*Beebe* v. *U. S.*, 161 U. S. 104; *Edgerton* v. *Edgerton*, 12 Mont. 122.) It would seem that the proper way to issue an execution is in the name of the party in whose favor the judgment has been given, and, if this be true, the execution ought to have issued in the name of Murray under any circumstances. (§ 312 Code Civil Procedure Compiled Statutes 1887; *Collins* v. *Smith*, 75 Wis. 395; Freeman on Executions, § 21.)

If any of these propositions are correct—and no one has disputed any of them in argument or brief—it was no concern of this plaintiff who owned the judgment at the time the execution issued, for it was of course by the mandate of execution itself that the sheriff acted.

The judgment of the district court, so far as it affects Murray, must be reversed, and the cause is remanded to the district court with directions to grant a new trial to Murray, proceeding in accordance with the views expressed in this opinion. When the lien of Murray is ascertained in amount, the court should then make a decree establishing the status of his lien toward the liens of the mortgagees and fixing their respective relations toward one another. In other respects the judgment is affirmed.

PEMBERTON, C. J., concurs.   DEWITT, J., not sitting.