COPPER RIVER LUMBER CO. v. CLARK et al.

(Third Division. Valdez. November, 1909.)

No. 631.

**1. MECHANICS' LIENS (§ 184\*)—MORTGAGES—PRIORITIES.**

The lienor furnished lumber to construct an additional building adjoining another building, upon which and upon the ground occupied by both buildings there was a prior recorded valid mortgage. *Held*, that the lien was valid upon the additional building, which could be severed and removed without injury to the mortgaged property.

[Ed. Note.—For other cases, see Mechanics' Liens, Dec. Dig. § 184.\*]

This is an action to foreclose a mechanic's lien against a building, and the lot of ground on which it stands, in Valdez, Alaska, being a one-story structure on a part of lot 5 in block 1 of the said town of Valdez.

A default having been entered as to the defendant Clark, the cause came on regularly for trial between the plaintiff and the Valdez Bank & Mercantile Company, defendant.

---

\*See same topic & § NUMBER in Dec. & Am. Digs. Key No. Series & Rep'r Indexes

The facts show that the defendant Valdez Bank & Mercantile Company took a mortgage on the lot in question and all the buildings situate thereon, with the exception of a building known as the "Gem Barber Shop," which belonged to third parties, in the sum of $5,000, on August 15, 1907, and duly recorded same in the records of the United States recording district, Valdez, Alaska, on the same date, and that there is now due and unpaid on said mortgage the sum of $3,167.61 and interest at 12 per cent. per annum since August 15, 1909. It appears that defendant Clark is still the legal owner of the title to said lot and buildings, although a suit to foreclose said mortgage is now pending in this court.

The pleadings and evidence further disclose the fact that subsequent to the date of the execution and filing of said mortgage the plaintiff company furnished at the request of the defendant Clark certain lumber to the value of $502.65, which was used in rebuilding the Gem Barber Shop, to which reference has heretofore been made.

OVERFIELD, District Judge. The greatest latitude in pleading is necessary to hold that the allegations in the plaintiff's complaint show that the materials furnished were used in the construction of the Valdez Hotel, as set out in the lien filed herein, although Plaintiff's Exhibit No. 3 (a photograph of the premises) shows that the building in which the lumber was used is called the Valdez Hotel, and is used as an office to the Valdez Hotel proper. So long as the lien sufficiently identifies the building to which the lien is sought to be attached, a sufficient allegation is made in that respect. The evidence supports the regularity and sufficiency of the making, filing, and bringing suit on the lien.

Three questions naturally arise at the outset in deciding this case: First. Does the lien attach to the ground on which the building rests? Second. Does the lien attach to the house?

Third. If the affirmative be given in answer to the first two questions, or to the latter alone, is the claim of the lien superior to that of the mortgage?

Section 263 of Carter's Annotated Civil Code provides in part that the land upon which any building is constructed, altered, or repaired, and a convenient space about the same, shall be subject to liens created under the Code.

Section 264, following, qualifies the above as to the land, providing priorities between liens and mortgages, that such a lien as in question shall be prior to any mortgage which may have attached to the land subsequent to the time when the building was commenced, or to an unrecorded mortgage at the time the materials were furnished.

This is a plain, but concise, statement of the two sections of the Code referring to the question at hand, and leads to the patent conclusion that a mechanic's lien cannot attach to the land on which a prior mortgage, duly recorded, exists at the time the lumber was furnished for the building, etc.

We then pass to the second interrogation. Reverting to the last part of section 264 of our Code, we find that all liens upon any building shall be preferred to all prior liens, mortgages, or other incumbrances upon the land upon which the building is situated when altered or repaired. I do not think the plain reading of the statute needs amplification. Nor does the further reading of said section, which provides that, in enforcing such lien, such building may be sold separately from the land.

A contention is made by the attorneys for the defendant company that this is not the correct construction of the statute, for the reason that the case of Inverarity v. Stowell, 10 Or. 262, would be noted as holding the old common-law rule that, as soon as a building is erected, it becomes a part of the realty and could not be severed; but in the opinion, at page 264, I think the restriction to the removal of buildings is but a little short of the general and more recent rule, which I deem to be

that any structure or improvement is subject to a lien under
section 264 as against a prior mortgage, and shall be sold sepa-
rately and removed from the land, where it can be severed
from the realty. And I quote from the case pointed out in
the defendant's brief, Johnson v. Puritan Mining & Milling
Co., 19 Mont. 30, 47 Pac. 337.

Hunt, J., quotes Jones on Liens, § 1373:

"A lien is given, not on the materials as such, but on the buildings
or improvements in the construction of which the materials are used.
The operation of the statute, in case there is a prior mortgage of the
land, is to dissever the improvements from the land or realty by giv-
ing a superior lien on such improvements and conferring on the pur-
chaser the right to remove them."

Mr. Justice Hunt, continuing, said:

"Now, to apply these controlling rules, plaintiff has not proved
that he erected a building or structure, or put any other improve-
ment upon the mining claims susceptible of severance and removal.
He relies solely upon the contention that, where the improvements
are incapable of segregation, the lien is upon the mine itself, and is
to be preferred to any prior lien, incumbrance, or mortgage upon the
land on which the buildings, structure, or improvements are erected.
But we think plaintiff is in error in the construction of the statute.
Many improvements, buildings, or erections placed upon mining
claims may be removed from the land itself. These are mills, hoists,
pumps, sheds, and other improvements upon which labor may have
been done. For all such improvements the lien for labor attaches
to the buildings or improvements in preference to any prior lien, in-
cumbrance, or mortgage, and they may be sold and removed."

The court, continuing, said that when the removal could not
be made, giving specific instances, then the statute in such case
has not provided for any preference over a prior existing mort-
gage, but rather, by clear implication, declared otherwise.
The case in point and under discussion was decided in favor
of the mortgagors and against the lienors for the reason above
stated—a failure to show that the personalty could be severed,
and the contention of counsel that the lien should be prior, even

to the land, from which a severance could not be had of the improvements. I take the case to be a fair exposition of the law of priority of liens as it exists to-day, and it may be stated, in passing, that the Montana and Iowa statutes are practically the same as ours (section 264).

To the same effect, also, is the case of Brooks v. Railway Co., 101 U. S. 446, 25 L. Ed. 1057, where Mr. Justice Miller says:

"The mechanic, therefore, has a lien upon the *land* paramount to all rights accruing after the commencement of his work, and upon what he puts upon the land, paramount to all other claims, whether created before or after that time."

The question, then, naturally follows: Can the building in question in this action be severed?

The defendant claims that it ought not to be severed, for the reason that it will undoubtedly diminish the security of his mortgage. The facts are that the space now occupied by this building was covered by two structures, one since connected in part to the building now in question, at least one side and the floor being used, but at the time of the erection and giving the mortgage the said building belonged to a stranger to the title to the ground. Ground rent, however, was being paid to the amount of the rental value of the building now enlarged and occupying its place on the lot. The other building was moved to the rear of the lot, and so far as the evidence discloses may be there yet.

It is fair to assume, with the lack of evidence to the contrary, that the building now standing upon the space formerly so occupied, is an improvement, and a substantial one, and, aside from the fact that property values have decreased since 1907, would enhance the value of the mortgage security. That it did so enhance it at the time of the erection of the building I have no doubt. The fluctuation of the market values of

mortgage securities cannot alter the priorities between a lienor and mortgagor; nor, I apprehend, can it alter the equities.

But the question of the removal of the building is one on which the attorneys for the plaintiff have grown hot and cold, in that they allege in their complaint that the building in which the lumber was used became a part of the Hotel Valdez, and in their reply allege that the lumber was furnished for and used in the construction of a new building, adjoining the building upon the lot at the time the mortgage was given, and was joined to and incorporated in and became a part of said Valdez Hotel.

At the trial of the case, the plaintiff put witnesses upon the stand to show that the construction of the building now in question could be severed, and that it is not a part of the Valdez Hotel proper. As no objection was made to this proof as not conforming to the allegations of the complaint and reply, and as an amendment would have been allowed upon motion of the attorneys for plaintiff, this evidence will be considered in deciding the merits of the cause.

The structure seems to have been made with 2x4 studding on the sides, lined on the inside, and toenailed to the adjoining buildings, and in a sense became a part of the Valdez Hotel proper; but it might equally well be said to be a part of the building on its opposite side, which is not situate on the lot in question, nor the property of the defendant Clark.

Under the peculiar construction of this building, I see no reason why it cannot be removed and still leave the mortgaged property undiminished in its intrinsic value and security, as distinguished from its decrease in market value since August 15, 1907. The decision of the court is that plaintiff have a decree for the amount of its lien, $502.65, $30 cost for preparing and filing his lien, and $100 attorney's fee..

Let findings of fact and conclusions of law be prepared accordingly.