[No. 6416.]

## STATE BANK OF CHICAGO V. PLUMMER.

1. PRACTICE—*Bill of Particulars*—It seems to be the general rule that in proceedings to enforce a mechanic's lien, where the work was done for a stipulated price, no bill of particulars is required.

But where the contract entitled plaintiff to a certain monthly stipend "and his expenses" the defendant may require detailed information, concerning such expenses. So where the demand is for "material furnished."

2. ——*For What Demands a Lien Is Allowed*—Where by the contract plaintiff was employed as superintendent, etc., at a monthly salary, "and his expenses," the expenses were held to be as much a part of his compensation as the stated monthly allowance. But only such expenses as are incurred in the work for which he was employed are allowed to him.

3. ——*Time of Filing Statement of Lien—Single or Several Contracts*—The defendants, a railway company, and a tunnel com-

pany projected a railway, one terminus of which was in the mountains, and the other in the plains, and a tunnel, to be part of such railway. The work was projected and planned as an entirety. There were three lien claimants, one an engineer, a part of whose claim was for general superintendence at a monthly salary, and other portions of it for the construction of particular parts of the tunnel, and laterals thereto, under separate contracts, and materials furnished in and for such construction. Another claimant had furnished material during different stages of the work, some to the defendant companies, directly, and some to the engineer while performing his contracts. The third claimant had sold and delivered ore cars to the railway company while work was proceeding in the tunnel. The last delivery made by this company was in 1903. There was no cessation of work upon the railroad and tunnel, for the period of thirty days, from a date prior to December 1st, 1902, to July 1st, 1905. Neither the railroad nor the tunnel had been completed at the time of the trial. All the lien claims were filed in the early days of July, 1905. *Held,* that as the completion of the tunnel as an entirety was planned in the beginning, and all the work was performed and all the material furnished in furtherance of this general design, what was done under these several contracts was not to be regarded as a separate structure or thing, nor were the several contracts to be regarded as distinct, for the purposes of the lien; that the liens attached to the railroad and tunnel as a whole, and that the several claims or statements of lien of the claimants were filed in apt time.

4. ——*Relation of Claim to the Beginning of the Work*—*Held,* further, that under Rev. Stat. sec. 4030 the liens related to the beginning of the work and were preferred to a mortgage subsequently recorded.

5. ——*Parties*—In an action by a material man or subcontractor the original contractor must be made party; and if a mortgagee is joined the owner must also be made party.

6. ——*Judgment Against Owner*—*Evidence Against Mortgagee*— The lien claimant must establish as against the mortgagee, not only the indebtedness of the owner, but that his claim is of a character entitling him to a lien. Therefore a judgment recovered by the lien claimant against the owner is admissible against the mortgagee, and conclusive that the claim has been adjudicated against the owner. But, as against the mortgagee it is not conclusive as to the amount thereby awarded. And where the judgment against the owner is not pleaded by the lien claimant the mortgagee may assail it by evidence of payment made by the owners for which no credit was given by the lien claimant, in taking judgment.

7. **Pleading**—*What Must Be Specially Pleaded*—In a proceeding to enforce a mechanic's lien the owner of the premises and a mortgagee thereof were made defendants. Judgments recovered by the lien claimants against the owner, were, though not pleaded, admitted in evidence as against the mortgagee. *Held*, that if excessive in amount they were to this extent a fraud upon the mortgagee, and the mortgagee having had no opportunity to plead this defense it was not to be excluded for the failure to plead it.

*Error to Teller District Court.*—Hon. James Owens, Judge.

Mr. Charles J. Hughes, Jr., Mr. Henry C. Cassidy and Mr. Barnwell S. Stuart, for plaintiff in error.

Mr. Henry Trowbridge, for defendants in error.

Mr. Justice Hill delivered the opinion of the court:

The defendants in error, John T. Plummer, The Morrell Hardware Company and J. M. Parfet, instituted separate suits in the district court of the city and county of Denver to foreclose mechanics' liens against certain property of The Cripple Creek and Pueblo Railway Company and The Gold Exploration and Tunnel Company. This property is in Teller county. To these actions the above named owners, The State Bank of Chicago as trustee and W. H. Spurgeon were made parties defendants. Personal judgments by default were procured against the owners of the property before answer by the bank, and before the time for it to answer had expired (it being a non-resident). After its appearance and upon its application the cases were transferred to the district court of Teller county, where they were consolidated for trial, pertaining to the issues raised by the bank, which included the amount and validity of the liens, and if valid, the question of priority between them, and the bank's lien evidenced by a mortgage upon the same property, executed by the railway company in favor of the bank, as trustee for certain bond holders. The judgments were in favor of the several lien claimants decreeing

the liens of Plummer and The Morrell Hardware Company superior to that of Parfet, and all three superior to the lien of the bank, to the property; foreclosure was ordered accordingly. The bank as trustee brings the case here for review upon error.

One hundred thirty-two assignments of error are presented. Those necessary to consider can be grouped into a few general contentions and will be disposed of accordingly.

It is claimed that the court erred in allowing the plaintiff Parfet to make certain amendments to his complaint during the trial. We cannot agree with counsel that the amendments added new causes of action. The action as against the bank was to foreclose a mechanic's lien for a certain amount, upon certain property in which it claimed an interest. The amounts covered by the amendments were included in this plaintiff's lien statement. The amount for which the lien was sought was greater in the original complaint than it was after the amendments were added. The amendments are now a part of the complaint, and as the case must be reversed for reasons hereafter stated, prior to a new trial the bank will have had ample time to make any preparation for any defense it may have thereto. This will eliminate any question concerning surprise or necessity for delay.

Prior to the trial the bank made a written demand upon the plaintiff Parfet for a bill of particulars covering each and every cause of action set forth in his complaint. This demand was not complied with; upon account of which the bank objected to the introduction of any testimony on Parfet's behalf; it also moved to strike all of his testimony. The objection and motion were overruled. The bank alleges, that his failure to furnish a bill of particulars was prejudicial error, upon account of which it was greatly handicapped in presenting its defense; that the provisions of general section 69, Revised Code, 1908, are applicable as well as mandatory. Upon behalf of Parfet it is claimed, that while the demand was made

upon the entire cause of action, the objection was limited to the first three causes concerning which, by order of the court, he had previously been required to sub-divide upon the bank's motion; that the motion to strike was too broad, because it jointly attacked both first and sixth causes; that the complaint as amended as to the first three causes contained as particular an itemized statement as could be required; also, that section 69, *supra,* does not apply; that the bank's relief, if any, should have been by motion under general section 66, Revised Code, 1908.

It appears to be the general rule in actions to foreclose mechanics' liens where the work was to be for a certain contract price that no bill of particulars is necessary.—*Montpelier Light, etc., Co. v. Stephenson,* 22 Ind. App. 175; *Stephenson v. Ballard,* 50 Ind. 176; *White v. West,* 58 N. Y. Sup. 841; *Menzel v. Tubbs,* 51 Minn. 364.

This general rule applies to part of Parfet's causes of action, but as to a part of the first and sixth we are of opinion that the bank was entitled to more definite information. The first is based upon an agreement that he was to be paid a certain amount per month *and his expenses.* The sixth is for services rendered *and material furnished.* These expenses and material items fall within the rule calling for detailed information. We see no necessity for determining whether it should be secured under section 66 or 69, Revised Code, 1908, for in either event, in view of a new trial, opportunity should be granted to plaintiff Parfet to furnish this information and to introduce evidence to support it.

It is claimed that no lien can attach for the so-called Parfet expense account of $1,500, which it is alleged was allowed under his first cause of action. The total amount allowed Parfet was much smaller than claimed. Much evidence was admitted, under the statement that as the trial was to the court it would admit the evidence and consider only that which it deemed competent. For these reasons it is impossible to ascertain the items which went to make up the $27,-

909.17, for which Parfet was decreed a lien. We might assume that this amount was awarded for other items than this expense account; there is evidence to sustain this assumption; but in view of a new trial, for other reasons, we think it competent to pass upon the contention concerning this claim. The complaint alleges and the evidence discloses that plaintiff Parfet was employed as superintendent, engineer and draftsman in the construction of the property at an agreed price of $250 per month *and his expenses.* Under these circumstances the expenses were part of the compensation to be paid him for his work while acting as superintendent, engineer and draftsman; therefore, it is just as much a part of his compensation as the $250 per month was.—*Lybrandt v. Eberly,* 36 Penn. St. 347.

In considering the items that are proper to be included in this expense account as lienable (in view of the different views of counsel) it is proper to state that they should be limited to his expenses as superintendent, draftsman or engineer *in the construction of the property.*—*R. A. G. & S. M. Co. v. Bouscher,* 9 Colo. 385.

It is claimed that none of the plaintiffs are entitled to a lien against the property involved, or if they are, they are inferior to the rights of the bank. The facts presenting these propositions are substantially as follows: Upon December the 3rd, 1902, the railway company gave a mortgage to the bank upon all of its property to secure its bonds in the sum of $250,000. This mortgage was filed for record in the office of the county clerk and recorder of Teller county December 13th, 1912; the bonds were sold; the money realized was principally in paying the expenses of extending a tunnel and laterals and placing railroad tracks therein, which one or both of the defendants (the tunnel and railway companies) were engaged in doing. This was to be a part of a railroad to be constructed by the railway company. The prospective terminal points of the railroad were Cripple Creek and Pueblo; the tunnel was to be utilized for railroad purposes.

Prior to the execution and recording of the mortgage Parfet was employed as superintendent of the work by the railway company. In this capacity he performed services in superintending the work of extending the tunnel, in connection with the construction of the railroad, commencing in November, 1902, continuing to March 10th, 1904. This was at an agreed price of $250 per month and his expenses. During this period he incurred considerable expenses which were unpaid, as well as the greater amount of the $250 per month agreed upon. On March 10th, 1904, he entered into a written agreement with the railway company to construct three hundred feet of tunnel at a specified sum per foot. Between that date and July the 1st, 1905, he entered into similar contracts to construct other portions of the tunnel, including several laterals connecting with the main tunnel, during which period at the request of the railway company he furnished materials and supplies which were used. In addition he also performed labor and services in constructing the railroad and tunnel, in the way of superintending such work. To secure and enforce a lien for the amount still due him for services rendered and material furnished during this entire period, the plaintiff Parfet, on July 3rd, 1905, filed a lien statement in the office of the county clerk and recorder of Teller county. There is abundant testimony to the effect that there was no cessation of labor on the tunnel and railroad for a period of thirty days from prior to December the 1st, 1902, to July the 1st, 1905.

The Morrell Hardware Company's account is for material and supplies furnished at different stages in the progress of the work of constructing the tunnel, laterals, and railroad, some furnished to the railway and tunnel companies direct, and some furnished Parfet under some of his contracts. The last of these materials appears to have been furnished about July 6th, 1905, at which date the company filed its lien statement therefor in the office of the county clerk and recorder of Teller county.

The Plummer claim is for ore cars sold and delivered to the defendant, the railway company, during the period the companies were doing work under the direction of Parfet as superintendent, between January 7th, 1903, and March 11th, 1903. The last item was delivered March 10th, 1903. This plaintiff's lien statement was filed July 6th, 1905, for the amount claimed to be due him. Both these materialmen introduced testimony to the effect that there was no cessation of labor for the period of thirty days between the commencement of the work on or before December the 1st, 1902, down to July the 1st, 1905. Neither the railroad nor tunnel had been completed up to this last named date, nor at the time of the trial.

The plaintiff in error contends, that each of the several items which go to make up the amounts included in the lien statements can only be regarded as having been rendered or furnished under separate and distinct contracts; that for lien purposes each of such contracts must be considered separate and distinct, and that the work provided to be done under each must be considered as a separate and entire structure within itself for the purposes of our lien act; that when thus considered the time within which to file a lien statement for the amount due under each contract began to run from the date each contract was completed; for which reasons none of the items can be made a basis for a lien against the property of the railway and tunnel companies, except those contracted for in 1905, and that when they are thus considered as standing alone, they cannot be made liens superior to that of the mortgage executed December 3rd, 1902, and recorded December 13th, same year.

As previously stated the evidence discloses that the work of constructing the tunnel and railroad was practically continuous from the time the work commenced on or before December 1st, 1902, down to July 1st, 1905, although under sundry different contracts and arrangements. But the agreed statements of fact and the evidence are conclusive of the fact,

that it was all in furtherance of one general design and intention on the part of the railway and tunnel companies, viz., to complete as one structure a railroad and tunnel, which tunnel was to be a part of the railroad system; that the entire structure when completed was to be a railroad between Cripple Creek and Pueblo. This was what the railway company was incorporated for. It was agreed that this was the object of its incorporation; but even if we ignore this general design and intention of the parties and limit our consideration to the tunnel itself (in which practically all this work was done) we are driven to the same conclusion. It was not planned as mining tunnels are, to be run for a certain distance at one time, with the possibility that it might be run a further distance at some future time if desired by its owners, depending upon many conditions and circumstances; but to the contrary, the completion of this tunnel *in its entirety* was planned for at the time this work was commenced by Parfet. It was to be constructed for railroad purposes, in order that a railroad could run between certain points, passing through it. Without its completion the objects for which it was being constructed could not be accomplished; the laterals in connection therewith were also thus planned as a part thereof, as Parfet states in his testimony when asked "Q. Mr. Parfet, what was this drift and laterals run for, if anything, aside from the construction of the railroad? A. Run as feeders for the main line, to get business for the main line of the railroad." This line of testimony stands uncontradicted; when the facts are summed up in their entirety, if we apply the rule to the entire proposed railroad, or limit it to that portion included in the tunnel and its laterals, the result is the same. They were all planned and being constructed as an entirety, as one structure, the lesser included in the greater. The facts are quite similar to those in *Brooks v. Burlington & Southwestern R. Co.,* 101 U. S. 443, where a similar conclusion was reached. When the property is thus ascertained to be one structure or identity, we find nothing in our mechanics' lien

act which requires that the work done under each contract be considered as a separate structure for the purposes of the act; but to the contrary, the act throughout contemplates that different portions or parts of the work will be done by different contractors, and that each may have a lien upon the entire property for the amount of his claim, for the work done upon or material furnished for a portion of the whole.—Section 4027, R. S., 1908.

This court has heretofore held, under section 4027, *supra,* that where the contract is for the construction of a part of a railroad or for materials furnished, used in constructing a part only, that the claimant is entitled to a lien upon the entire road.—*Barnes et al. v. The C. S. & C. C. D. Ry. Co.,* 42 Colo. 461.

We also held under the former act which was quite similar to section 4027, *supra,* where the contract was for the construction of a flume along the line of a canal, that this gave a lien upon the entire canal as between the lien claimant and the owner.—*Jarvis et al. v. State Bank of Fort Morgan et al.,* 22 Colo. 309.

These principles are applicable here. As between the lien claimants and the owners the liens, if valid, attach to the entire property.—*Brooks v. Burlington & S. W. R. Co.,* 101 U. S. 443; *Steger v. Arctic Refrigerating Co.,* 89 Tenn. 453; *Creer v. Cache Valley Canal Co.,* 4 Idaho 280; 2 Jones on Liens, section 1619; Boisot on Mechanics' Liens, section 190; Phillips on Mechanics' Liens (3rd Ed.), section 202; *Neilson et al. v. Iowa Eastern Railroad Co.,* 51 Iowa 184.

Section 4033, R. S., 1908, in part, reads:

"* * * all such lien statements claimed for labor and work by the day or piece, but without furnishing material therefor, must be filed for record after the last labor for which the lien claimed has been performed and at any time before the expiration of one month next after the completion of the building, structure or other improvement; all lien statements of all other sub-contractors and of all material men whose

claims are either entirely or principally for materials, machinery or other fixtures, must be filed for record after the last labor is performed or the last material furnished for which the lien is claimed, and at any time before the expiration of two months next after the completion of such building, structure or other improvement, and the lien statements of all other principal contractors must be filed for record as aforesaid after the completion of their respective contracts and at any time within three months next after the completion of the building, structure or other improvement."

This section (which is different from the former act) is self-explanatory of the fact that the liens were not filed too early or too late. They were filed after the contract was performed, or the material furnished, for which the lien was claimed, and before the completion of the structure. As previously stated there had been no cessation of labor thereon from the time the first work commenced under Mr. Parfet until the date the liens were filed. This section does not require that they wait until the property is completed; that time might never arrive.—*Rice v. Rhone,* 49 Colo. 41; *The Lookout Lbr. Co. v. The Mansion Hotel and Belt Railway Co.,* 109 N. C. 658; *Levert v. Read,* 54 Ala. 529; *Young v. The Orpheus,* 119 Mass. 179; *Davies v. Miller,* 130 U. S. 284; *Hunter v. Truckee Lodge,* 14 Nev. 24; *Baldridge v. Morgan et al.,* 106 (N. M.) 342.

Section 4030, R. S., 1908, reads, in part:

"All liens, established by virtue of this act shall relate back to the time of the commencement of work under the contract between the owner and the first contractor; or, if said contract be not in writing, then such liens shall relate back to and take effect as of the time of the commencement of the work upon the structure or improvement, and shall have priority over any and every lien or encumbrance subsequently intervening, or which may have been created prior thereto, but which was not then recorded, and of which, the lienor, under this act, did not have actual notice."

The first contract with Parfet as superintendent is not shown to have been in writing. None of the contracts are shown to have ever been recorded and none of the provisions of section 4029, R. S., 1908, were ever complied with. If the first contract with Parfet is to be construed as a contract with a contractor within the meaning of section 4030, *supra,* then he commenced construction under it in November, 1902, or at least on or before December the 2nd, 1902. If we accept this position as correct, all these liens would relate back to and take effect as of that date. If this construction of his contract is not correct, and it was not a contract with a contractor within the meaning of this section, but while acting as superintendent, he was the agent of the companies, and they were in this manner engaged in the construction of the work, then, under this section, the liens would relate back to and take effect as of the date of the commencement of the work by the companies, under him as superintendent. This was on or before December 2nd, 1902, and prior to the date of the execution or recording of the mortgage; hence, accepting either position as correct, the result is the same, and under section 4030 the liens antedate the date of the execution of the mortgage which, by stipulation, is shown to have been December the 3rd, 1902; the date when it was filed for record was December 13th, 1902, for which reasons the liens became prior in time upon this property. This conclusion which is in harmony with the findings of the trial court makes unnecessary any consideration of the contention pertaining to the after acquired property clause in the mortgage, where the property was partially brought into existence by the lien claimants.

Over the objections of the defendant, the plaintiffs were allowed to introduce in evidence their judgments secured by default against the railway and tunnel companies. It is claimed that this was prejudicial error. We cannot agree with this contention. In an action by a sub-contractor or material-man to foreclose his lien the original contractor must be made a party to the suit. The claim must be adjudicated and estab-

lished against the contractor in favor of the sub-contractor or materialman.—*Charles v. Hallack Lbr. Co.,* 22 Colo. 283; *Davis v. Mouat Lbr. Co.,* 2 Colo. App. 381; *Estey v. Lumber Co.,* 4 Colo. App. 165; *Marean v. Stanley,* 5 Colo. App. 335; *Clayton v. Farrar Lbr. Co.,* 119 Ga. 37; *Vreeland v. Ellsworth et al.,* 71 Iowa 347.

Where there is a mortgage upon the property and the mortgagee is made a party, the same rule would apply in requiring that the owner be made a party to the suit. In order for these plaintiffs to recover it was necessary for them to show in order to bind the mortgagee, not only that the owners were indebted to them in the amount alleged in the petition, but that the same was the kind of indebtedness which would sustain a lien against the property sought to be held, and both facts must be established against the owners. It must be adjudicated in this, or have been in some other case, as between them. Where, as in this case, the contention is between two rival claimants to the property, to-wit, lien claimants and mortgagee, it was necessary for the plaintiffs to establish their claims against the owners. The judgments were competent evidence to show that the claims had been established against the owners. They were estopped from denying their validity. It was conclusive against them that the personal liability had been established. This estops them from thereafter disputing the claim.—*Missoula Mercantile Co. v. O'Donnell,* 24 Mont. 65; *Batchelder v. Rand,* 117 Mass. 176.

There are reasons for the rule which requires this. To illustrate, suppose that service had not been made upon the railway company and no adjudication had against it; that the action had proceeded against the mortgagee; that the liens were established as against it, and in order to prevent foreclosure it paid the indebtedness and upon foreclosure of its mortgage it then sought to have the amount paid the lien claimants added to its lien and in this manner be subrogated to the rights of the lien claimants; that in answer to such petition the owner denied the indebtedness or alleged that a

part of the indebtedness had been paid prior to the entry of the judgment and that it had never had its day in court concerning it. In such case it could not be estopped from so doing, for the reason that the claim had never been established against it. This reason for the general rule is apparent in most all cases, if a sub-contractor establishes his lien against the property and the owner is compelled to pay it (if not owing the principal contractor the amount) he has recourse upon him, but must be furnished with an adjudicated claim between the two contractors and not with a mere open account. We think the judgments competent for the purpose of showing that such claims had been established against the owners of the property. It was conclusive against the owners and was likewise conclusive against the mortgagee of that fact, to-wit, that the claim had been adjudicated against the owner.

In presenting its alleged defenses the bank attempted to prove that a part of the alleged indebtedness covered in the Parfet default judgment had been paid, prior to the time the judgment was secured, and prior to the date that his suit was instituted. All this line of testimony was excluded upon the theory that the judgment was conclusive of these facts and could not be impeached by the bank, except upon allegations and proof of fraud and collusion between the parties to the judgment. Many authorities are cited to show that judgments cannot be otherwise attacked.

In considering this question it is necessary to take into consideration the parties, the pleadings and record as they existed at the time this testimony was offered. The plaintiff Parfet instituted his action to foreclose a mechanic's lien, making as parties defendants the owners of the property and the mortgagee representing an interest therein. His complaint alleges that he performed services and furnished materials in the construction of the property, for which the owners owed him a certain amount, which had not been paid; that he was entitled to a lien therefor, etc. These were the allega-

tions in the complaint which the bank was summoned to answer and which it did within the time allowed. In its answer and which it did within the time allowed. In its answer and which it did within the time allowed. In its answer of a part of this indebtedness. In his replication to this answer Parfet denied the allegation of payment. This was the condition of the pleadings when the evidence was offered. It will be observed that no judgment against the owners was plead, hence, the mortgagee had no opportunity by answering any pleading to attack for fraud or collusion, the validity of the judgment between Parfet and the owners; but if counsel are correct, regardless of these facts, upon account of the owners allowing a default judgment to be taken against them, the bank is precluded from presenting a defense which is made a direct issue by pleadings between it and Parfet. If this is the correct rule, in this class of cases a portion of the issues as made up by the pleadings might or might not be issues upon which evidence could be received at the time of the trial, depending upon whether certain other defendants might or might not allow default judgments to be taken against them. We do not think' this reasoning sound, but are of opinion that the fact that the owners allowed judgments to be taken by default against them did not preclude the mortgagee from showing that a part of this alleged indebtedness had been paid prior to the time the suit was brought. If the bank could show this, then the judgment was in law a fraud as against it. The issues as made up involved the payment of a part of the indebtedness, the ruling was that upon account of the default judgment against the owners, the bank was not entitled to offer evidence to sustain this defense, for the reason that the owners had not seen fit to defend the action, although the bank had sought to do so.

In *Brooks v. Burlington & Southwestern R. Co.*, 101 U. S. 443, it was held that judgments in favor of sub-contractors against the owners are not conclusive as to the validity of the lien against a mortgagee not a party to the action. We gather this from the following language in the opinion:

"It is also to be observed that O'Hara & Co. and Wells, French & Co., had both commenced legal proceedings in the proper courts of the state to establish their liens before the present foreclosure suit was begun by appellants, and that in those courts, after a contest with the railway company, judgments were rendered establishing their liens, and it was after this that they were made defendants to the present foreclosure suit.

To these proceedings, Barnes, the principal contractor, and the railway company were parties, and we take it for granted that as against them the judgment of the state court establishes the validity of the lien. The appellants being no party to these proceedings are not bound by that judgment, and both the validity of the lien as against them, and whether the lien, if valid, is paramount to that of the mortgage, are the questions for consideration here."

In *Sargent v. Salmond et al.,* 27 Me. 539, it was held that a judgment is evidence of the amount of indebtedness between the parties to it, but is not binding as to third persons not parties or privies thereto. A creditor of Salmond, after having obtained a judgment against him, sought to recover in satisfaction of his judgment certain real estate which it was alleged belonged to the defendant Salmond, but was held in the name of Mary P. Salmond. In the latter action she sought to attack the validity of the indebtedness upon which the judgment was rendered. It was held she had that right. In commenting upon this phase of the case, at page 547, the court said:

"The judgment is evidence against William Salmond, the debtor therein, of the amount of indebtedness; but it is not binding against the other defendant, who was not a party to the judgment or the suit in which it was rendered. She is entitled to impeach it in this suit, commenced for the purpose of affecting her personally, or the interest in the property, which she claims as belonging to her. If she has received property of the other defendant fraudulently as against the

creditors of the latter, she cannot be bound to restore it beyond an amount sufficient to cover the just and legal claims of creditors. When the bill, answers and proof are considered, it satisfactorily appears, that the complainant took judgment against William Salmond for a sum larger than that to which he had a just and legal claim, and it does not conclude the defendant, Mary P. Salmond."

In *Montgomery et al. v. Rich et al.,* 3 Tenn. Ch. Rep. 660, it was held that a *bona fide* purchaser to land may successfully contest a claim of the creditor of the vendor by virtue of mechanics' liens fixed by attachment and judgment, by showing that the lien debt had been paid before the sale and judgment. In commenting upon this subject the court, at pages 663-664, in part, said:

"The case before us is that of a third person who is seeking to avoid the effect of the judgment of a justice on realty, the title to which was acquired by such third person previous to the rendition of the judgment. It is not exactly a collateral attack on the judgment. It is rather the assertion of a right which, the bill insists, should not be affected by the judgment. And the question is not so much the invalidity of the judgment, as of the complainant's right to contest with the defendants, as between them, facts which the defendants may claim as settled in their favor, against Long, by the judgment.

As a general principle, a transaction between two parties in a judicial proceeding will not be binding on a third party. * * * "it would be unjust to bind any person who could not be admitted to make a defense, or to examine witnesses, or to appeal from a judgment he might think erroneous; and, therefore, the depositions of witnesses in another cause in proof of a fact, the verdict of a jury finding the fact, and the judgment of the court upon facts found, although evidence against the parties and all claiming under them, are not, in general, to be used to the prejudice of strangers." * * *

Accordingly, it has been held that a mortgagee of land is not

estopped by a judgment, in an action between his mortgagor and a prior mortgagee, rendered after the execution of the second mortgage, but may litigate the amount due upon the mortgage, notwithstanding the prior judgment.—*Campbell v Hall,* 16 N. Y. 575.  * * *  The complainants have the right, therefore, to contest with the successful litigant those matters which bear upon their rights, just as if no such judgment had been rendered.  And they have proved by Long himself that the defendants' debt, so far as it could claim to be a mechanics' lien on their land, was paid before the attachment suit was instituted.  * * *  The burden of proof is thus thrown upon the defendants, as between them and complainants, to show affirmatively the existence of a mechanics' lien for any portion of the debt claimed."

In *Clark et al. v. Moore,* 64 Ill. 273, it was held, that where certain lien claimants had not been made parties to a foreclosure under mechanics' liens by others, and where property had been sold thereunder at an inadequate price, that on application by them the court was justified in setting the former sale and decree aside; that by the decree and sale the other lien claimants had acquired no right that barred or precluded those not made parties from asserting their rights; that when the decree and sale were set aside the other lien claimants were then at liberty to contest the amount or validity of any or all of the liens being asserted against the property, precisely as they could have done had they been parties to the first proceeding; that if the allowance was too large in favor of any one of the plaintiffs and endangered any portion of the other claims, that they, for their own protection, had the unquestioned right to resist and have it reduced to its just and fair amount, just the same as though the former judgment had not been rendered; that the findings of the court in the first decree was not conclusive against those not then parties to the action.  The same rule is announced in Boisot on Mechanics' Liens, section 670.

In *Early v. Albertson,* Vol. 2 Weekly Notes of Cases (Penn.) 369, it was held that terre tenants should always have an opportunity to defend against the validity of lien claimants.

In *Field v. Oberteuffer,* 2 Phila. Rep. 271, it was held that the amount of a judgment confessed on mechanics' lien claims is not conclusive against· an auditor of the court in making his report for its distribution where the defendant's real estate had been sold at sheriff's sale and the funds paid into court.    In passing upon this subject at page 273 the court said:

"We agree with the auditor that the judgment *confessed* upon the claim filed, ought not to have been deemed *conclusive* evidence of the sum due, but no case could better illustrate the propriety of this decision, than that which has given rise to the exception.    For it appears plainly on the auditor's investigation, that the *judgment* had been *advisedly* confessed for a much larger sum than was due as mechanics' claim under the acts of assembly."

Without approving or disapproving as a whole the rulings in the cases last cited, we think, as stated in the last case that the facts here are also of that class which gives rise to the exception.    This record discloses, that Mr. Parfet was one of the promoters as well as one of the original stockholders of the railway company; that he was its first superintendent of construction; he testified that certain gentlemen would become interested therein only on condition that he be selected in such capacity; that as the representative of the company he disbursed in construction a large amount of the money received from the sale of the bonds represented by the plaintiff in error.

Under such circumstances, without making any intimation that there is anything wrong with the amount of Mr. Parfet's claim, or that there is any fraud or collusion, where, as here, it is made an issue by the pleadings, we think that

the bank should have the opportunity to defend against any and all portions of the claim, and if payments have been made, as its pleadings alleged, it should have the right to show these facts, regardless of the default judgment entered against the owners. This principle is recognized in *Gordon-Tiger Co. v. Loomer,* 50 Colo. 409. A purchaser had acquired from the decedent's heirs certain real estate which might be jeopardized by the allowance of certain claims against the estate, for that reason we held that he had the right to intervene and defend against the claims.

That portion of the decree fixing the amount of their claims and declaring them liens upon the property including the order of their rank or class in favor of the plaintiffs, John T. Plummer and The Morrell Hardware Company, as between themselves and the plaintiff Parfet, and as against the defendants is affirmed. For the reasons stated the judgment in favor of the plaintiff J. M. Parfet is reversed and the cause as between him and the bank is remanded for a new trial upon the questions only of the amount due him, including the question of payments and what items are lienable under his expense account, in harmony with the views herein expressed. The ultimate decree rendered to include an order of foreclosure in favor of the plaintiff Plummer and The Morrell Hardware Company similar to the former decree in this respect. The plaintiff in error will recover one-half of its costs for this writ of error against the defendant in error Parfet, the defendants in error Plummer and The Morrell Hardware Company will recover their costs upon this writ of error against the plaintiff in error.                    *Affirmed in part.*

*Reversed and Remanded in part.*

Decision *en banc.*

Mr. JUSTICE GABBERT dissents.

CHIEF JUSTICE CAMPBELL not participating.

Mr. JUSTICE GABBERT, dissenting in part:

In concur in the reversal of the judgment of the trial court, but dissent from so much of the opinion as holds that the lien claimants are, or may be, entitled to any relief giving them rights in the property involved superior to that of the mortgagee. The liens of claimants cannot relate back to the inception of the work in December, 1902, except it be upon the theory that the work done and materials furnished between that date and July, 1905, was in furtherance of one general design on the part of the railway and tunnel companies to complete, as one structure, so much of the tunnel and railway as was completed on the latter date. There is not the slightest testimony to indicate any such design. On the contrary, in my opinion, it is clear from the testimony, pleadings and agreed statement of facts, that the work of constructing a railroad and tunnel during the period for which the respective liens are claimed, was not one entire undertaking continuously and uninterruptedly followed up as one piece of work, and carried on in furtherance of one general design; but that the work prosecuted during this period was on a series of disconnected, separate and distinct structures or improvements, constructed either by the owners or by contractors under separate and distinct contracts, and that the materials furnished were under separate and distinct contracts, corresponding in point of time with the periods and during which the separate and disconnected portions of the tunnel and railway were constructed. Such being the facts, it follows on principle and authority, that where labor or materials are furnished under separate and distinct contracts for the construction of separate and distinct portions of a tunnel or railway, a lien statement must be filed for what was done or furnished under each contract, within the statutory period after its completion.—27 Cyc. 144; *Sweet et al. v. James,* 2. R. I. 270; *Hobkirk v. Portland B. B. Club,* 44 Oregon 605; *King et al. v. Shipbuilding Co.,*

50 Oh. St. 320; *Nye et al. v. Berger,* 52 Neb. 758; *Livermore v. Wright,* 33 Mo. 31.

Applying this rule, it is apparent that neither of the liens claimed can be enforced as superior to the mortgage lien of the bank.