503 P.2d 163 (1972)
AMERICAN FACTORS ASSOCIATES, LIMITED, a corporation doing business as Silver Steel Company, Plaintiff-Appellee,
v.
TRIANGLE HEATING AND SHEET METAL COMPANY, a corporation, et al., Defendants-Appellees,
International Business Machines Corporation, a corporation, Defendant-Appellant.
No. 70-411.
Colorado Court of Appeals, Division I.
August 22, 1972.
Rehearing Denied September 12, 1972.
Certiorari Denied December 4, 1972.
*164 Fairfield & Woods, Peter F. Breitenstein, Charles E. Matheson, Denver, for plaintiff-appellee.
Hoffman, Goldstein & Armour, Abe L. Hoffman, Dyer & Swenson, Denver, for defendant-appellant.
D. L. Glenn, Denver, for Air Purification Company, defendant-appellee.
Hopkins, Hurth & Yeager, Charles A. Hurth, Jr., Boulder, for Boulder Steel and Masonry Supply, Inc., defendant-appellee.
Selected for Official Publication.
PIERCE, Judge.
This action originally involved multiple parties and various claims, cross-claims, and counterclaims between them. On appeal, however, the only issues raised concern the respective rights of three alleged mechanics' lien holders against land owned by International Business Machines Corporation (IBM). Those involved here are American Factors Associates, Limited, doing business as Silver Steel Company (Silver); Boulder Steel and Masonry Supply, Inc., (Boulder Steel); and Air Purification Company (Air Purification).
This dispute arose out of construction of the IBM plant at Niwot, Colorado. IBM retained N. G. Petry Co. (Petry) as general contractor for construction of the plant. Petry, in turn, subcontracted with Cook Construction Co. to do the mechanical work. Cook subcontracted with Triangle Heating & Sheet Metal Co. (Triangle) to manufacture the ducts. Each lien claimant supplied goods to Triangle, allegedly to be used in the construction of the IBM plant. Triangle went out of business prior to settling accounts with these claimants. As a result, the claimants sought foreclosure on the IBM property. The trial court ruled in their favor, and IBM brought this appeal.

*165 I.
IBM's first contention is that the trial court erred in applying the mechanics' lien law as it existed prior to certain amendments to the statute. Specifically, in 1965, the mechanics' lien statute was amended to provide more precise time requirements for filing liens. 1965 Perm.Supp., C.R.S.1963, 86-3-9. However, the amendment, by its terms, applied only to construction commenced after that date. 1965 Perm.Supp., C.R.S.1963, 86-3-27. The trial court determined that this amendment did not apply to the construction at the IBM plant, even though portions of that construction began after October 1, 1965. The court found that the proposed plant at IBM was a continuing project, designed to function as one integrated unit. In the absence of proof that specific portions of the project were not essential components of the whole, the trial court applied the correct statute. State Bank v. Plummer, 54 Colo. 144, 129 P. 819; Cary Hardware Co. v. McCarty, 10 Colo.App. 200, 50 P. 744.
We reject IBM's claim that these cases are distinguishable. While it is true that they deal with the issue of "relating back" to determine at what point in time a job was started so as to determine when the lien attached, the principles regarding the commencement date of continuing projects, enunciated therein, are relevant and controlling in this case.

II.
IBM next contends that, even were the pre-1965 law applicable, these claimants did not timely file because IBM occupied the buildings prior to completion of the construction and the work done thereafter was fitting-up in nature and not part of the original contract. The trial court rejected this contention. It ruled that the work done after IBM's occupation was significant and necessary; hence, lien statements did not need to be filed until after completion of this work.
IBM, relying upon C.R.S.1963, 86-3-9(8),[1] argues that occupation of the building was conclusive proof of its completion. It is undisputed that IBM occupied the building prior to the completion date determined by the trial court. However, the Colorado Supreme Court has previously held that C.R.S.1963, 86-3-9(8) is not to be construed in an unreasonable way, and that it is within the province of the finder of fact to rule that occupation of premises does not necessarily mean completion of the project. Mortgage Brokerage Co. v. W. B. Barr Lumber Co., 91 Colo. 445, 16 P.2d 32. Nor, as IBM suggests, can the rule in Mortgage Brokerage Co. be restricted to work done by the principal contractor on the initial contract after occupation. To so rule, would strip the protections offered by the lien statute of any vitality with regard to subcontractors. See 3190 Corp. v. Gould, 163 Colo. 356, 431 P.2d 466. Here, there was sufficient evidence presented for the trial court to find that occupation by IBM was not coterminous with completion.
We have considered all of IBM's claims regarding the nature of the work done after occupation and up to the completion date as determined by the trial court, together with its claim that the work entailed in fitting up the new buildings for occupancy was not of such a nature as to extend the time for filing lien claims. *166 While it is true that each additional increment of work, in and of itself, might not be substantial enough to entitle the mechanic to a lien claim on the entire project, the fit-up work, which IBM claims was not substantial in nature, was necessary for efficient occupation of the building. It was in no respect trivial. Therefore, it was not error to include that work within the time period to file lien claims. See Lichty v. Houston Lumber Co., 39 Colo. 53, 88 P. 846; Stidger v. McPhee, 15 Colo.App. 252, 62 P. 332. Determination of completion date is within the province of the trier of fact and will not be overturned on appeal where the evidence supports its finding. Kaibab Lumber Co. v. Osburne, 171 Colo. 49, 464 P.2d 294.

III.
IBM's next contention is that each lien claimant failed to establish that the goods supplied by it were, in fact, delivered to the IBM construction site for incorporation into the project and, for that reason, it was error to enter judgment in their favor. We agree, in part, with this contention.
Initially, it should be noted that the failure of IBM and Petry, as general contractor, to file the construction contract, as provided by C.R.S.1963, 86-3-1(3), results in each claimant becoming the statutory agent of the owner. As such, IBM's contention that they are too remote to be entitled to a lien is without merit. Therefore, the question becomes whether they have done all else that is required to establish themselves as lien claimants.
The fundamental principle involved in mechanics' liens is that, in order to be entitled to a lien, the lienor must add value to the structure of the owner. With value added, the owner would gain an unjust enrichment were he not required to pay for the services or material rendered. Farmers Irrigation Co. v. Kamm, 55 Colo. 440, 135 P. 766; Kobayashi v. Meehleis Steel Co., 28 Colo.App. 327, 472 P.2d 724. Thus, even though the lien laws are to be construed in favor of materialmen, it is essential that the materialmen perfect their claim. Here, we do not think two of the three claimants met this burden.
Specifically, the trial court ruled, upon motion of one claimant in the initial stages of the trial, that the claimants were not required by law to prove delivery to the IBM construction site. We disagree.
Silver and Boulder Steel delivered stock items of sheet metal materials to the subcontractor, Triangle. Although most of the invoices for these materials showed that they were to be charged to the credit of IBM, Triangle was engaged in projects other than the IBM construction, and the proof of these claimants, apparently in reliance upon the trial court's ruling, fell short of establishing delivery to the IBM site. Under these facts, the lack of proof of delivery to a specific job, particularly where the subcontractor had other projects in progress to which materials were delivered, is fatal to the lienors' claims. Graham v. Brenden, 142 Colo. 88, 349 P.2d 702.
The cases cited by the lien claimants in support of the trial court's ruling do not dispense with the necessity for proof of delivery as a prerequisite to a valid claim under facts such as those before us. In Atkinson v. Colorado Title & Trust Co., 59 Colo. 528, 151 P. 457 and B. F. Salzer Lumber Co. v. Lindenmeier, 54 Colo. 491, 131 P. 442, the rule was announced that a lien claimant need not show that all materials furnished were actually used in the construction. However, in each of those cases, it is clear that the materials were delivered to the construction site. Nor is there anything in Kobayashi v. Meehleis Steel Co., supra, that would lead us to a different conclusion. In that case, not all the goods upon which the lien claim was established were delivered to the job site, but they were specially manufactured items, produced to the specifications of the owner, which were delivered to a fabricator and which could not be used elsewhere. The fact that they were not all incorporated into the construction was held not to be controlling since it was through no fault of the supplier.
*167 Applying the general rule to the proof presented in this case, it is apparent that Air Purification met its burden of proving all elements of its claim. With regard to Silver and Boulder Steel, however, the record does not show sufficient proof of delivery. IBM is entitled to such proof, if it is to be held responsible for these claims, and Silver and Boulder Steel should have an opportunity to present the necessary evidence since they were not required to do so at trial due to an erroneous ruling of the court. We therefore remand for a factual determination regarding delivery.

IV.
IBM next contends that the trial court erred in awarding the claimants interest on their judgments. This contention has no merit. York Plumbing and Heating Co. v. Groussman Investment Co., 166 Colo. 382, 443 P.2d 986.
The lien claimants also allege error in the trial court's granting of interest, asserting that the court denied interest between the dates the mechanics' liens were filed and the date judgment was entered. While York would indicate that they are correct in this contention, we will not consider this issue on appeal since they failed to raise it by motion for new trial. Martin v. Opdyke Agency, Inc., 156 Colo. 316, 398 P.2d 971. The trial court's judgment as to interest is, therefore, affirmed.

V.
We have carefully examined all other contentions of IBM and find them to involve questions of fact determined by the trial court. As such, they will not be overruled on appeal.
The judgment in favor of Air Purification is affirmed. The judgments favoring Silver and Boulder Steel are reversed and remanded with directions that the trial court conduct further hearings to determine whether the items which are the subject of the lien claims of Silver and Boulder Steel were delivered to the job site, and for further proceedings not inconsistent with this opinion.
SILVERSTEIN, C. J., and DWYER, J., concur.
NOTES
[1] (8) "Any trivial imperfection in, or omission from the said work, or in the construction of any building, improvement or structure, or of the alteration, addition to or repair thereof, shall not be deemed such lack of completion as to prevent the filing of any lien. In case of contractors, the occupation or use of the building, improvement or structure by the owner, or his representative, or any other person with the consent of the owner or his agent, or the acceptance by said owner or his agent of said building, improvement or structure, for the purpose of this article, shall be deemed conclusive evidence of completion. For the purposes of this article cessation from labor for thirty days upon any unfinished contract or upon any unfinished building, improvement or structure, or the alteration, addition to, or repair thereof, shall be deemed equivalent to a completion thereof."