(61 App. Div. 238.)

PEOPLE ex rel. EHRLICH v. GRANT, Sheriff.

(Supreme Court, Appellate Division, First Department. May 17, 1901.)

1. EXECUTION OF SHERIFF'S DEED AFTER EXPIRATION OF TERM.

The fact that a sheriff is not in possession of, and has no control over, his official books, papers, documents, and records, and has no present recollection of an execution sale made by him, is no excuse for his refusal to execute a deed to the premises after the expiration of his term, where plaintiff's right is properly established, since the certificate of sale, which is matter of record, contains all facts necessary for the making of a proper deed.

2. MANDAMUS—APPEAL—DEFENSE OF LIMITATIONS.

An objection that a mandamus proceeding is barred by limitations cannot be raised for the first time on appeal.

3. LACHES—PERFECTION OF TITLE UNDER SHERIFF'S SALE.

A sheriff sold premises on execution in 1887, and delivered to the purchaser a certificate of sale, which was assigned to relator. Relator's husband took possession of the premises under a sheriff's deed recorded in 1886, and made under a judgment, which was subsequent to the lien of the judgment under which relator claims title; and relator has since lived with her husband on the premises. *Held*, that a lapse of 13 years before relator made application to perfect her title, caused by lack of knowledge of the necessity of such proceeding, is not such laches as will defeat her

right, the delay not having been prejudicial to the husband's adverse interest.

Van Brunt, P. J., and Ingraham, J., dissenting.

Appeal from special term.

Mandamus by the people, on the relation of Jeannette Ehrlich, against Hugh J. Grant, late sheriff of the county of New York. From an order granting a peremptory writ against the defendant commanding him to make and deliver a deed of certain premises sold by him under an execution, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, PATTERSON, and INGRAHAM, JJ.

Latham G. Reed, for appellant.
De Lagnel Berier, for respondent

HATCH, J. This is an appeal from an order granting a peremptory writ of mandamus against the defendant, the late sheriff of New York county, commanding him to make and deliver a deed of certain premises sold by him under an execution in 1887. The motion was opposed on the ground that the application should be denied on account of laches, 13 years having elapsed since the sheriff's sale; and, further, that from the facts disclosed in the relator's petition the application should not be granted. In addition to these grounds, it is urged in this court that the proceeding is barred by the statute of limitations. It appears that the premises were sold in 1887, that the defendant delivered to the purchaser a certificate of sale duly acknowledged, and that the same was thereafter transferred by assignment from Hutchinson, the purchaser, duly acknowledged, to the relator, Ehrlich. The defendant also executed and acknowledged another certificate of sale, which he filed, as required by law, with the clerk of the county, where the same was made a matter of public record; the steps thus taken being such as are required by sections 1438 and 1439 of the Code of Civil Procedure. There was no redemption of the premises, and no deed pursuant to such sale was ever delivered by the defendant to the relator, nor was demand made therefor of the sheriff until November, 1900. During this period of time the relator's husband had been in possession of the premises under a sheriff's deed recorded October 26, 1886, made upon a certificate of sale under an execution issued upon a judgment which was entered and docketed November 28, 1884. At that time the judgment under which the relator received the certificate of sale was in existence, and was a prior lien to the judgment under which the husband now holds title. The relator was living and still lives with her husband upon the premises, and the reason why she has not heretofore demanded a deed from the defendant is that she did not understand the necessity of perfecting her title by such deed. The only excuse which the defendant makes for refusing to now execute the deed is that he is not now in possession of, and has no control over, his books, papers, documents, and records, and that he has no present recollection of the sale and the circumstances attending it. It is quite evident that this excuse is without merit. The certificate of sale, which is matter of record in

the office of the county clerk, gives full and complete information up-
on this subject, and contains all of the facts essential to be known for
the making of a proper deed, while the assignment from Hutchinson
to the plaintiff establishes the relator's right to the deed. All of
these facts are undisputed. The execution of the deed is necessary in
order to perfect the relator's title to the land, and, as appears by the
moving papers, the perfection of title by the execution of the deed is
necessary in order to enable the relator to obtain a loan upon the
land. As the matter now stands, the husband's title is defective be-
cause subject to the recorded certificate of sale; which evidences a
right superior to his title, while the relator's title is defective until
she can procure the execution and delivery of the deed. So that it is
clear that, unless the deed be executed and delivered, the relator is
deprived of the free use and enjoyment of her property, and the same
is depreciated in value for any purpose of incumbrance or sale. Un-
der these circumstances it is clear that the relator should have the re-
lief which she asks, unless she is debarred therefrom by some inex-
orable rule of law, or has lost her right by reason of delay in demand-
ing her deed. By the provisions of section 1471 of the Code of Civil
Procedure, the sheriff is required to execute the proper deed in order
to convey to the person entitled thereto title to the premises. The
language of this statute is mandatory, and seems to impose an abso-
lute duty. It is not necessary, however, that we presently determine
whether the sheriff would be in default for failing to execute a deed
immediately upon the expiration of the 15 months. Probably he
would not, for, until a demand was made by the person entitled thereto,
he might not know to whom the deed should be made and delivered.
But the making and delivery of the deed, by the terms of the pro-
vision, is imposed upon him as an absolute duty whenever a de-
mand is made, unless he be excused by other matters. Is he present-
ly so excused? It is said that the statute of limitations denies the
right. Prior to the Code, it is evident that no statute of limitations
ran against this writ. People v. Board of Sup'rs of Westchester Coun-
ty, 12 Barb. 446. Some conflict of authority has arisen since the
adoption of section 414 of the Code of Civil Procedure, by which pro-
vision Mr. Throop hoped to settle the question. In People v. Common
Council of Syracuse, 78 N. Y. 56, it was said that the matter of the
issuance of the writ was governed by no fixed rules of law, but rested
in discretion. In People v. Chapin, 104 N. Y. 96, 10 N. E. 141, it is
said that the statute of limitations does not prevent the issuing of the
writ of mandamus. The remark is probably obiter, but it was said
by an able judge, and was the enunciation of a very learned court.
In People v. Lantry, 48 App. Div. 131, 62 N. Y. Supp. 630, this court
said, "There is no statutory limitation within which an application
for a writ of this character must be made," and applied the rule which
was announced in the two preceding cases. In People v. French, 13
Abb. N. C. 413, it was held by the old general term of this court,
through Mr. Justice Daniels, that the limitation applicable to actions
was, by section 414 of the Code, made applicable to special proceed-
ings; and Mr. Justice Lawrence, at special term, in People v. French,
12 Abb. N. C. 156, held the same rule. It is noticeable that the two

last cases sought to recover money, and there was every reason for denying the writ without applying the statute of limitations to the cases; for within the doctrine of the cases which we have cited the application for the writ would have been properly denied for the reason therein stated, and the rule is constantly asserted in the recent decisions of this court. The writ is uniformly denied in all cases where there has been an unusual delay and the rights of other parties may be affected. It is not necessary in the present case that we decide whether the statute of limitations has run against the writ asked for in this case or not. It is settled in this court by authority (People v. Lantry, 44 App. Div. 392, 60 N. Y. Supp. 1009; In re Jordan's Estate, 50 App. Div. 244, 63 N. Y. Supp. 911), that in special proceedings an objection that such proceeding is barred by the statute of limitations must be taken in the court below, and it cannot be interposed for the first time in the appellate tribunal. It must have been raised and passed upon by the court below, or it will be deemed to be waived. The papers in the present case fail to show that such objection was urged or considered by the court at special term. The only point presented for its determination was that of laches; consequently, the question as to whether the statute of limitations bars this proceeding is not before this court. If this were an ordinary case, undoubtedly the lapse of time which has intervened would constitute gross laches, and the writ also might be denied if there were any person in existence whose rights would be prejudiced by its issuance. In the cases to which we have called attention, as well as all the others to which our attention has been called, this last consideration is made one of controlling importance. In the exercise of the discretionary power involved in the issuance of the writ, the primary consideration is the circumstances and conditions surrounding the particular case; and if, upon their consideration, it appears that the person moving for the writ is clearly entitled to the right which it seeks to enforce, and no one is or can be prejudiced by its issuance, then laches ought not to intervene to defeat it. People v. Marsh, 21 App. Div. 88, 47 N. Y. Supp. 395. Under such circumstances it is quite proper to say, as was said by the learned judge at special term in granting this writ, "A delay in enforcing one's rights that has not caused prejudice to an adverse party is not laches;" and, when there is added to this the further qualification that no other person's rights are or can be prejudiced, it is correct as the statement of a rule of law, and no lapse of time ought to intervene to bar the right, in the absence of an inexorable rule of law properly presented. In the present case the writ seeks to enforce the performance of official duty in order that a person may be confirmed of a title to land to which admittedly she is entitled. The facts are all known; the right is absolute and certain; the defendant charged with the duty is alive, and may perform it; the person entitled is alive, and may receive it. Under such circumstances, I think the law would be found halting if it failed in compelling the act to be performed. It may be further observed that any final order entered in this proceeding will have no binding force or effect upon any person except the relator. The defendant, as sheriff, will not be prohibited by any order entered herein

from making, executing, and delivering his deed, either to the relator, or to any other person to whom she might assign the certificate of sale; and, if the sheriff should die, the duty of executing a deed—it never having been executed and delivered—would devolve upon the under-sheriff, if he be living; and, if both be dead, then upon the successor of the sheriff in office at the time when the deed is executed. Code Civ. Proc. § 1475. It is clearly evident that the consequence of an order in denial of the right would leave authority in the sheriff still to execute the deed, and would vest him with power to demand a substantial money consideration for the execution and delivery of the deed. In other words, he would be in a position where he might bargain with the relator for perfecting her title. It is quite evident that such conditions ought never to be created. It opens the door to extortion, and might permit a sheriff to profit by his own wrong. These considerations serve also to show that the husband's title under his deed is absolutely defective, as there exists the recorded outstanding certificate of sale in the relator, which may at any time, under the contingencies here suggested, be made the basis of defeating his title. No just reason, therefore, can be assigned why the relator's property right should thus be destroyed when her rights are clearly apparent. The power which denies it endows form and technicality with vitality to enable it to strangle justice.

For these reasons, I think the order should be affirmed, with $10 costs and disbursements. All concur, except VAN BRUNT, P. J., and INGRAHAM, J., who dissent.

INGRAHAM, J. (dissenting). This proceeding was commenced by notice of motion for a peremptory writ of mandamus requiring Hugh J. Grant, late sheriff of the city and county of New York, forthwith to execute, acknowledge, and deliver a deed to certain premises which had been sold by Grant, as sheriff, under an execution. The affidavit upon which the application was granted alleged that on the 13th day of May, 1884, judgment was entered in the office of the clerk of the city court in an action against one Bridget Hogan, and such judgment was duly docketed; that execution was issued on said judgment on the 5th day of April, 1887, and that on the 2d of June, 1887, Grant, then sheriff of the county of New York, sold, according to law, all the right, title, and interest of Bridget Hogan in and to the lands and premises described; that one Hutchinson became the purchaser, and on the 2d of June the said sheriff executed and delivered to him a certificate of sale; that on the 4th of January, 1888, Hutchinson, for a valuable consideration, duly assigned said certificate to the relator by a written assignment, and said certificate and assignment were duly filed on January 5, 1888, in the office of the clerk of the county of New York; and that the reason the petitioner has not heretofore demanded a deed from said Grant is that the premises have been in the possession of her husband since October, 1886, and the petitioner did not understand the necessity of perfecting her title by such deed. No demand was made upon the sheriff for the deed until the 21st day of November, 1900, more than 12 years after the relator became entitled to it from him, and the petitioner's husband was in possession of

the premises under a deed from one Davidson, late sheriff of the county of New York, dated October 13, 1886, and recorded in the register's office October 26, 1896.   On these papers the court below granted the peremptory writ of mandamus, from which Grant appeals.

We think that the right to institute this proceeding was lost by the lapse of time, and that the court below should have denied the application on the ground that the right was barred by the statute of limitations.   The relator had the right to demand this deed from the sheriff on the 3d of September, 1888; and upon the refusal of the sheriff to deliver the deed at that time  she had the right to institute a proceeding for a mandamus to require him to perform his official duty.   She made no such demand, nor did she institute any proceeding to obtain the deed for over 12 years, when the sheriff had been for many years out of office.   Whether or not a writ of mandamus will be granted is a question addressed to the sound judicial discretion of the court, and any gross laches on the part of the applicant will justify the court in refusing to issue the writ, and this irrespective of any statute of limitations.   We have lately applied this principle in many cases where a mandamus for reinstatement in public office from which a person was illegally removed has been applied for.   People v. Keating, 49 App. Div. 123, 63 N. Y. Supp. 71;  People v. Collis, 6 App. Div. 467, 39 N. Y. Supp. 698.   I can see no reason why the same rule is not applicable to the case at bar, irrespective of the statutory limitation as to the time in which a proceeding of this character can be commenced.   I think, however, that the institution of this proceeding was barred by the statute of limitations.   An application for mandamus is a special proceeding.   Code Civ. Proc. § 3334.   By section 388 of the Code it is provided that "an action the limitation of which is not specially prescribed in this or the last title, must be commenced within ten years after the cause of action accrues."   And, if this relief were sought by an action, this section would apply, and the time within which the statute would be a bar would be 10 years from the time when the cause of action accrued.   By section 414 of the Code it is provided:  "The provisions of this chapter apply, and constitute the only rule of limitation applicable to a civil action or special proceeding," except in certain specified cases, which do not apply to this proceeding.   The section then says:  "The word 'action' contained in this chapter is to be construed, when it is necessary so to do, as including a special proceeding, or any proceeding therein, or in an action."   And Mr. Throop's note to this section shows that that was intended to make the bar of the statute apply to a special proceeding.   By section 415 of the Code it is provided:

"The periods of limitation prescribed by this chapter, except as otherwise specially prescribed therein, must be computed from the time of the accruing of the right to relief by action, special proceeding, defence or otherwise, as the case requires, to the time when the claim to that relief is actually interposed by the party, as a plaintiff or a defendant, in the particular action or special proceeding."

I think, therefore, that a proceeding to enforce a right, or to compel the performance of an obligation by another, whether it be in an action or a special proceeding, is governed by the limitations pre-

scribed by this chapter. There would seem to be several cases, however, which, without examining the question, have assumed that there was no statute of limitations that would prevent the issuance of a writ of mandamus. People v. Chapin, 104 N. Y. 96, 10 N. E. 141, was a case in which the court below granted a mandamus requiring the state comptroller to refund to the petitioner the purchase money paid on an invalid sale of land for taxes. The attorney general at the trial does not seem to have taken the point that the issuance of this writ was regulated by the statute of limitations; but the court, in reversing the order granting the mandamus, said:

"On the contrary, Osborn, if he had any rights, slept upon them so long that he must be deemed to have acquiesced in the claim of Viele and of Peck, or at least to have consented, by his silence and inaction, to the dealings of the comptroller with them as the lawful assignees of the purchaser. And, although the statute of limitations does not prevent the issuing of the writ of mandamus, the damage and inconvenience resulting from the lapse of time are to be considered, and the writ should not be granted after the period fixed as a bar for actions has expired. * * * It [the writ] may also, in the discretion of the court, be denied when the delay in moving is so unreasonable, although it falls short of the time given for commencing actions; but after that time, when the delay is unexplained and unaccounted for, it ought not to be granted."

See People v. Preston, 62 Hun, 189, 16 N. Y. Supp. 488, affirmed on appeal, 131 N. Y. 644, 30 N. E. 866; People v. Lantry, 48 App. Div. 131, 62 N. Y. Supp. 630.

Whether, therefore, we regard the statute of limitations as an absolute bar to proceedings of this character, or by analogy as furnishing a rule by which the court will be controlled in the exercise of its discretion whether or not a writ shall issue, the result is the same, as, after a lapse of 10 years—which is the period in which an action to enforce an obligation to deliver a deed can be maintained—the right to require the delivery of such a deed by mandamus is lost.

It follows that the order appealed from should be reversed, with $10 costs and disbursements, and the motion denied, with costs.