COMMERCIAL BANK & TRUST CO., RESPONDENT, *v.* JORDAN ET AL., APPELLANTS.

(No. 6,460.)

(Submitted May 25, 1929. Decided June 29, 1929.)

[278 Pac. 832.]

*Mr. E. Pat Kelly,* for Appellants; *Mr. James Hartnett* and *Mr. Frank T. Jordan,* of the Bar of Chicago, Illinois, submitted an original and a reply brief; *Mr. Hartnett* argued the cause orally.

378

*Messrs. Brown, Wiggenhorn & Davis,* for Respondent, submitted an original and a supplemental brief; *Mr. Horace S. Davis* argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This action was brought by the Commercial Bank & Trust Company to quiet title to an undivided one-half interest in a tract of land situated in Sweet Grass county.

The complaint alleges title in plaintiff, and that each of the defendants, without right, claims some interest in the property. The defendant Marcia E. Stocker filed separate answer and cross-complaint, in which she denied that plaintiff is the owner of the property and alleged that she is the owner of the property as the surviving wife of Charles F. Stocker, but subject to certain transactions between Charles F. Stocker and John F. Asbury, both now deceased, and asks that title be quieted in her. The defendants Dorothy Asbury Jordan and Elizabeth Augusta Asbury filed joint answer and cross-complaint, in which they deny that plaintiff is the owner of the property and allege that they are the owners thereof as the

only heirs of John F. Asbury, deceased, who died seised of said property, but subject to certain transactions between John F. Asbury and Charles F. Stocker, and ask that title be quieted in them. All of the other defendants defaulted.

By reply and answer the affirmative allegations of the answers and cross-complaints were put in issue, save that it was admitted that Dorothy Asbury Jordan and Elizabeth Augusta Asbury are the only heirs at law of John F. Asbury, deceased, and that Marcia E. Stocker is the surviving wife of Charles F. Stocker, deceased. The answer of plaintiff to the cross-complaints also alleged that plaintiff has been in the open, notorious, and exclusive possession of the property continuously since July 3, 1915, and for more than ten years prior to the commencement of the action under color of title based upon a sheriff's certificate of sale, and that the causes of action set forth in the cross-complaints are barred by sections 9015 and 9016, Revised Codes of 1921.

The defendants Dorothy Asbury Jordan, Elizabeth Augusta Asbury and Marcia E. Stocker filed replies to the answer of plaintiff to the cross-complaints, in which there were denials of the affirmative allegations contained therein.

The cause was tried to the court sitting without a jury. Judgment was rendered in favor of plaintiff, from which the appeal was taken.

The record discloses, and the parties stipulated, that the property in question was deeded to Charles F. Stocker on April 30, 1908; the deed being recorded on October 19, 1910. To sustain the allegations of its complaint, plaintiff introduced in evidence the judgment-roll in a certain action entitled *Melville Trading Co., a Corporation, Plaintiff,* v. *Charles F. Stocker, Defendant.* From this it appears that the Melville Trading Company commenced an action against Charles F. Stocker on October 21, 1910, to recover judgment for $544.04 for goods, wares and merchandise sold and delivered by the trading company to Stocker. Summons was served upon the defendant in that action. Upon his failure to appear, judgment by de-

fault was entered on November 15, 1910. Plaintiff also introduced evidence showing that on January 4, 1911, Charles F. Stocker and his wife, the defendant Marcia E. Stocker, executed and delivered to the Big Timber National Bank their promissory note in the sum of $16,450, and at the same time, to secure its payment, executed and delivered a mortgage upon the property here involved. The note and mortgage were transferred to plaintiff on December 3, 1913. On March 7, 1912, Charles F. Stocker and Marcia E. Stocker conveyed the property in question by warranty deed to John F. Asbury. June 8, 1915, execution in the case of *Melville Trading Co.* v. *Stocker* was issued and levied upon the same property. The property was sold under the writ of execution on July 3, 1915. John F. Asbury was at that time the president of the plaintiff bank. The record discloses that he and the other officers of the bank had discussed the matter of making a settlement of the Stocker indebtedness of $16,450, and it was decided that the plaintiff would purchase the property at the execution sale rather than foreclose its mortgage on the property. The record discloses that pursuant to this arrangement, also agreed to by the Melville Trading Company, the bid was made for $100. There is evidence that S. G. Hawks, a director and majority stockholder, made the bid, but one witness thought the bid was made by John F. Asbury.

Immediately after the sale John F. Asbury, with other officers of the plaintiff bank who attended the sale, went to the sheriff's office while the certificate of sale was prepared by the under-sheriff. The certificate of sale recites that the property was "sold at public auction * * * to the Commercial Bank & Trust Company." This is corroborated by oral testimony. The bank cashier testified that $100 was paid by plaintiff by crediting the account in the bank of A. G. Hatch, the attorney for the Melville Trading Company. Also, there was introduced in evidence a report made by the plaintiff bank to the state superintendent of banks, and signed by John F. Asbury, in which was shown an item of $100 paid by the plaintiff on August 4, 1915, on the Stocker ranch.

There is evidence that in the summer of 1915, after the execution sale, John F. Asbury and L. R. Peck posted a sign on the buildings situated on the property in question, which was dictated by Asbury, reading as follows: "Notice to public. We do not object to your occupying but please do not destroy. Commercial Bank & Trust Company, Owners." Ever since the sale the plaintiff has paid taxes on the property, leased it, collected rentals, and treated the property as its own without interference or molestation.

On July 10, 1915, the under-sheriff made return to the execution, in which it is stated that the property was sold "to John F. Asbury." On November 2, 1916, a sheriff's deed was issued to State Farms Company. On December 30, 1918, the State Farms Company by deed conveyed the property to plaintiff. On February 24, 1927, a sheriff's deed to the property was issued to plaintiff.

The court found that plaintiff became the owner of the property on July 3, 1915, by purchase at the execution sale, and that the defendants have no interest therein; that the property was then sold to plaintiff for the sum of $100 and that the sheriff's deed of February 24, 1927, was regularly issued to plaintiff; that plaintiff has been in the open, notorious, exclusive and peaceable possession of the property for more than ten years before the commencement of this action; that the claim and title of plaintiff was founded upon the sheriff's certificate of sale of July 3, 1915; that the note in the sum of $16,450, executed by Charles F. and Marcia E. Stocker, and the mortgage securing the same, were unpaid on December 3, 1913, and were on that day assigned by the Big Timber National Bank to plaintiff, and that the same were unpaid and owing to plaintiff on July 3, 1915; that the statement in the sheriff's return to the effect that the property was sold to John F. Asbury was erroneous and contrary to the facts.

Upon these findings, judgment was entered for plaintiff. Defendants contend that the judgment-roll in the case of *Melville Trading Co.* v. *Stocker* was improperly received in evidence, first, because, it is contended, the complaint was not

properly verified. The complaint was verified by A. G. Hatch, attorney for Melville Trading Company. It recites that he makes the verification for the reason that "none of the officers or agents of said company are in the town of Big Timber." Contention is made that, since the verification does not recite that no officer of the corporation was within the county at the time it was made, the attorney had no authority, under section 9163, Revised Codes of 1921, to make it. Contention is also made that the verification fails to show the source of knowledge of the facts on the part of the person making the verification.

Verification of pleadings is not necessary to vest jurisdiction in the courts. Here, at most, the verification was defective and upon proper and timely objection the defendant in that action could have taken advantage of the defect, but, not having done so, the objection was waived. As was said by this court in *Johnson* v. *Puritan Min. Co.*, 19 Mont. 30, 47 Pac. 337: "It is also held that the verification is not a part of the pleadings, strictly speaking, and is not necessary to vest jurisdiction. 'Like any other formal matter, its absence is waived by failure to object. And if its entire absence does not affect the jurisdiction, of course mere defects cannot.' (Van Fleet's Collateral Attack, § 251.)"

Defendants next contend that the judgment-roll in that ▇▇▇ action was inadmissible and that the judgment was void because it was rendered by the clerk and not by the judge of the court. From the complaint in that action it appears that the action was one "arising upon contract for the recovery of money." The defendant failed to appear by answer, demurrer, motion or special appearance. It thereupon became the duty of the clerk, upon application of the plaintiff, to "enter the default of the defendant; and immediately thereafter enter judgment for the amount specified in the complaint." (Sec. 6719, subd. 1, Rev. Codes 1907, now sec. 9322, subd. 1, Rev. Codes 1921.)

There was full compliance with this section of the statutes in the proceedings resulting in the judgment in the case of

*Melville Trading Co.* v. *Stocker.* Upon the entry of the default of the defendant there remained but the ministerial act of the clerk in entering the judgment, and that act, under the circumstances, involved no judicial function. (34 C. J. 178; *Soliri* v. *Fasso,* 56 Mont. 400, 185 Pac. 322.) A judgment by default entered by the clerk under statutory authority has the same effect as a judgment rendered upon a verdict of the jury. (34 C. J. 172.) The duty of the clerk under the facts here presented being ministerial, there was then no necessity of having formal judgment signed by the judge. (*McIntyre* v. *Northern Pac. Ry. Co.,* 58 Mont. 256, 191 Pac. 1065.)

Defendants contend that if the judgment in the case of *Melville Trading Co.* v. *Stocker* is valid, still plaintiff must fail in this action for the reason that John F. Asbury was the purchaser at the execution sale on July 3, 1915, as shown by the sheriff's return, and that the title acquired at that sale merged in the superior title acquired by the warranty deed from Charles F. and Marcia E. Stocker to John F. Asbury on March 7, 1912.

When the judgment was entered against defendant in the case of *Melville Trading Co.* v. *Stocker,* on November 15, 1910, it became a lien upon the property here involved and continued for six years. (Sec. 6807, Rev. Codes 1907, now sec. 9410, Rev. Codes 1921.) When the conveyance was made by Charles F. and Marcia E. Stocker to John F. Asbury, on March 7, 1912, the property was burdened with the lien of the judgment, and Asbury took the property subject to the lien. When the property was sold on July 3, 1915, to satisfy the lien of the judgment, the purchaser acquired all the rights of the judgment debtor in and to the property at the time the judgment became a lien on the property. (*MacGinniss Realty Co.* v. *Hinderager,* 63 Mont. 172, 206 Pac. 436; 11 Cal. Jur. 127.) And the deed made by the judgment debtor in March, 1912, after the judgment lien had attached, did not give a title superior to that of the execution purchaser. (23 C. J. 754.)

This brings us to a consideration of the determinative question whether the district court was warranted in finding that

plaintiff, and not John F. Asbury, was the purchaser at the execution sale on July 3, 1915.

The evidence does not preponderate against, but preponderates in support of, the finding that plaintiff was the purchaser at that sale. The rule is that on appeal in an equity case, where reversal is asked on the ground that the evidence is insufficient to support the findings, this court will not disturb the findings unless there is a decided preponderance in the evidence against them. (*Dahlberg* v. *Lannen,* 84 Mont. 68, 274 Pac. 151.)

Whatever the rule may be in other jurisdictions, in this state the return of the sheriff is merely *prima facie* evidence of the facts stated therein. (Sec. 3015, Rev. Codes 1907, now sec. 4779, Rev. Codes 1921.) The return may be contradicted by other evidence. (*State ex rel. Merrell* v. *District Court,* 72 Mont. 77, 231 Pac. 1107.) This rule should be especially applicable here to explain why the return was at variance with the sheriff's certificate of sale. Title to the property passes by virtue of the certificate of sale, subject to the right of redemption. (*Citizens' Nat. Bank* v. *Western Building & Loan Co.,* 64 Mont. 40, 208 Pac. 893.)

"The title of a purchaser at an execution sale cannot be affected by defects or informalities in the return." (23 C. J. 798; see, also, *Hibberd* v. *Smith,* 67 Cal. 547, 56 Am. St. Rep. 726, 4 Pac. 473, 8 Pac. 46, and *Spencer* v. *Haug,* 45 Minn. 231, 47 N. W. 794.) And delay in securing the sheriff's deed does not affect its validity. (*McCauley* v. *Jones,* 34 Mont. 375, 115 Am. St. Rep. 538, 86 Pac. 422; *People ex rel. Ehrlich* v. *Grant,* 61 App. Div. 238, 70 N. Y. Supp. 504.) Neither did the sheriff's deed to the State Farms Company, a stranger to the proceedings at the execution sale, have any effect upon the power or authority of the sheriff to execute a deed to the actual purchaser. The evidence warrants the finding of the court that plaintiff was the purchaser at the execution sale on July 3, 1915. We might with propriety affirm the judgment on this ground alone, but it is clear that the judgment must be affirmed upon other grounds also.

The plaintiff alleged that the claims of the defendants who appeared are barred by sections 9015 and 9016 of the Revised Codes of 1921. These sections provide:

"9015. No action for the recovery of real property, or for the possession thereof, can be maintained, unless it appear that the plaintiff, his ancestor, predecessor, or grantor, was seized or possessed of the property in question within ten years before the commencement of the action. No action for the recovery of dower can be maintained by a widow unless the action is commenced within ten years after the death of her husband."

"9016. No cause of action, or defense to an action, arising out of the title to real property, or to rents or profits out of the same, can be effectual, unless it appear that the person prosecuting the action, or making the defense, or under whose title the action is prosecuted or the defense is made, or the ancestor, predecessor, or grantor of such person, was seized or possessed of the premises in question within ten years before the commencement of the act in respect to which such action is prosecuted or defense made."

The evidence shows, and the court found, that plaintiff has been in the open, notorious, exclusive and adverse possession of the property since July 3, 1915, founding its claim on the sheriff's certificate of sale. A sheriff's certificate of sale constitutes a color or claim of title, within the meaning of section 9019, Revised Codes of 1921. (*Morrison* v. *Linn*, 50 Mont. 396, 147 Pac. 166; *Goodwin* v. *McCabe*, 75 Cal. 584, 17 Pac. 705; *Goetter* v. *Moore*, 53 Wash. 5, 101 Pac. 365; *Philadelphia etc. Co.* v. *Palmer*, 32 Wash. 455, 73 Pac. 501.)

The bar of the statute is here complete unless the minority of the defendants Dorothy Asbury Jordan and Elizabeth Augusta Asbury prevented the running of the statute because of section 9026, Revised Codes of 1921. The record discloses that on July 3, 1915, Dorothy Asbury Jordan was about fifteen years of age and Elizabeth Augusta Asbury was seventeen years of age. The record shows that John F. Asbury died in December, 1915, and that plaintiff took adverse possession of

the property during the lifetime of John F. Asbury and with his knowledge. The cause of action here pleaded by the defendants Dorothy Asbury Jordan and Elizabeth Augusta Asbury, therefore, arose during the lifetime of their ancestor, John F. Asbury, through whom they claim. The rule is that when the statute of limitations has commenced to run against a claim, its operation is not suspended by the subsequent death of the one in whose favor the cause of action accrued, because of the minority of his heirs. Thus, in 2 C. J. 118, it is said: "If an adverse possession commences in the lifetime of an ancestor it will continue to run against the heir notwithstanding any existing disability on the part of the latter, where the right accrues to him or to her. Although they are infants, married women, or persons of unsound mind, they are nevertheless bound to sue before the expiration of the statutory period just as much as their ancestor would have been had he lived." To the same effect are *Scallon* v. *Manhattan etc. Co.,* 185 N. Y. 359, 7 Ann. Cas. 168, 78 N. E. 284; *Westphal* v. *Arnoux,* 51 Cal. App. 532, 197 Pac. 395; *Hardin* v. *Swinney,* 214 Ky. 793, 284 S. W. 75; *Huling* v. *Moore* (Tex. Civ. App.), 194 S. W. 188; *Street* v. *Shaddix,* 197 Ala. 446, 73 South. 73; *Kidd* v. *Browne,* 200 Ala. 299, 76 South. 65; *Garner* v. *Wingrove,* 2 Ch. 233, 3 Ann. Cas. 937; *McDonald* v. *Hovey,* 110 U. S. 619, 28 L. Ed. 269, 4 Sup. Ct. Rep. 142.

The evidence discloses that the causes of action pleaded by the defendants Dorothy Asbury Jordan and Elizabeth Augusta Asbury are barred by the statute of limitations. Since these defendants have no right, title or interest in the property in question, it follows that defendant Marcia E. Stocker, who by her own testimony claims but the right to repurchase from them, has no right, title or interest therein.

The judgment is affirmed.

Mr. Chief Justice Callaway and Associate Justices Matthews, Galen and Ford concur.