In the Matter of HENRY KENNY, Appellant, against ALFRED E. Loos, as Chairman of the Board of Parole of the State of New York, et al., Respondents.

Third Department, May 11, 1955.

*Henry Kenny,* appellant in person.

*Jacob K. Javits, Attorney-General* (*Henry S. Manley, Raymond B. Madden* and *J. Bruce MacDonald* of counsel), for respondents.

HALPERN, J. This is an appeal from an order of the Special Term dismissing the petitioner's application under article 78 of the Civil Practice Act for an order annulling the determination by the Board of Parole requiring the petitioner to serve the remainder of an unexpired sentence, pursuant to section 219 of the Correction Law.

The petitioner was sentenced on November 8, 1945, upon his plea of guilty to the crime of robbery, second degree, to imprisonment for an indeterminate term, the minimum of which was four years and the maximum of which was fifteen years. The petitioner was then eighteen years of age. Pursuant to the mandate of article 3-A of the Correction Law (§§ 60–64), he was committed to the Elmira Reception Center for classification and confinement in accordance with that article. Subsequently, he was transferred to Elmira Reformatory and was confined there for a period of two years and eight months, after which he was released on parole.

While on parole, the petitioner committed the crime of attempted robbery in the third degree and, upon his plea of guilty to a charge of that offense, he was sentenced on October 26, 1948, to Sing Sing prison. The Board of Parole notified the petitioner in November, 1948, that he would be compelled to serve a period of ten months of his first sentence before commencing service of his second sentence but subsequently, in July, 1949, the Board notified the petitioner that it had rescinded this determination and that he would be required to serve the whole of the unexpired balance of the maximum of his first sentence, pursuant to section 219 of the Correction Law, before commencing service of his second sentence.

The petitioner brought this proceeding to review the validity of the Parole Board's determination in January, 1954. The court below dismissed the proceeding upon the ground that more than two years had elapsed after the making of the determination sought to be reviewed (Civ. Prac. Act, § 1286). We do not believe that, in the situation here presented, the two-year statute bars the proceeding. The confinement of the petitioner under the Parole Board's determination was a continuing one and, correspondingly, the Parole Board was under a continuing duty to determine correctly the duration of the prisoner's confinement in accordance with the applicable statutes. (*Matter of Cash* v. *Bates,* 301 N. Y. 258, 261; *Matter of De Luca* v. *Gaffney,* 282 App. Div. 607, 611; cf. *Post* v. *Lyford,* 285 App. Div. 101.) Neither can it be said that the application was barred because of laches, in the absence of a showing of prejudice by reason of the delay (*People ex rel. Ehrlich* v. *Grant,* 61 App. Div. 238). We accordingly pass to the merits of the application.

Section 219 of the Correction Law, relied upon by the Parole Board, provides that, if any prisoner commits a felony " while on parole from a state prison he shall, in addition to the sentence which may be imposed for such felony, and before begin-

ning to serve such sentence, be compelled to serve in state's prison the portion remaining of the maximum term of the sentence on which he was released on parole from the time of such release on parole until the expiration of such maximum ".

The petitioner focuses attention upon the phrase " while on parole from a state prison " and he argues that, since he was not on parole from a State prison, section 219 does not apply to him. This argument is superficially a persuasive one but, in order to understand the nature of the problem, it is necessary to look beyond these words in section 219 to the statutory plan of which the section is a part.

Under article 3-A of the Correction Law, male offenders between the ages of sixteen and twenty-one years who are convicted of offenses punishable by imprisonment in State institutions under the jurisdiction of the Department of Correction, and who are sentenced to imprisonment, must be sentenced " without designating the name of such institution " and must be " committed to the department reception center for classification and confinement ". (§ 61, subd. 1.) However, the court having jurisdiction to pronounce sentence may nevertheless " fix the term of imprisonment "; the court may either sentence the prisoner to an indeterminate sentence with a maximum and a minimum or it may sentence him " for an indefinite term governed as to length " by the provisions of article 12 regulating the term of imprisonment in Elmira Reformatory (Correction Law, § 61, subd. 2). As this has been rephrased in the new section 64, added by chapter 803 of the Laws of 1954, the court may sentence the offender either " to an indeterminate sentence, or to a reformatory term ". An indeterminate sentence is commonly referred to as a State prison sentence. It is defined as " A sentence to imprisonment in a state prison having minimum and maximum limits fixed by the court or the governor " (Correction Law, § 230, subd. 1). See, also, section 2189 of the Penal Law governing " *Indeterminate sentences to state prisons* ". A reformatory term is a term of indefinite length which may be terminated by the Board of Parole at any time but which is not, in any event, to run more than five years (Penal Law, § 2184-a, as amd. by L. 1954, ch. 803; Correction Law, § 288, as amd. by L. 1945, ch. 678).

When the Governor's Interdepartmental Committee on Delinquency recommended the setting up of the Elmira Reception Center in 1945, it recommended that all sentences to the Center " should be entirely indeterminate, at least for first offenders " (1945 Interim Report, Part II, State's Role in Treating Delin-

quency, p. 35). By the phrase " entirely indeterminate ", the committee meant a sentence of indefinite length governed by the statutes regulating imprisonment in reformatories, without any minimum or maximum set by the court (p. 42).

The Legislature did not adopt this portion of the committee's recommendation. It reserved to the court the power to fix a minimum and maximum for the term of imprisonment (Correction Law, § 61, subd. b; § 63). The Legislature thus, in effect, authorized the court to impose a State prison type of sentence upon an offender committed to the Elmira Reception Center. If such an offender were subsequently transferred to the Elmira Reformatory, the anomalous situation would be created that the prisoner would be confined in a reformatory but would be subject to a State prison sentence. This was expressly provided for in section 63 of the Correction Law as added by chapter 554 of the Laws of 1945: " The confinement of any offender shall be governed by laws applicable to the institution to which he is certified for confinement, but his parole and discharge shall be governed by the laws applicable to the sentence imposed by the court."

This situation could not ordinarily have arisen prior to 1945 when the Elmira Reception Center was set up. Offenders between the ages of sixteen and thirty were then subject to direct sentence to Elmira Reformatory, just as offenders between the ages of twenty-one and thirty now are (Penal Law, § 2185). Offenders so sentenced directly to Elmira could not be given an indeterminate sentence of the State prison type nor could the court " fix or limit the duration " of the term of imprisonment (Penal Law, § 2195; *People* v. *Madden,* 120 App. Div. 338; *People ex rel. Guariglia* v. *Foster,* 275 App. Div. 893, affd. 301 N. Y. 515; see, also, Penal Law, § 2184-a). The duration of the term of imprisonment of prisoners sentenced to Elmira Reformatory was governed by section 288 of the Correction Law. On the other hand, an indeterminate sentence could be imposed only on one sentenced to a State prison.

However, as we have seen, under the compromise statute adopted in 1945 with respect to offenders between the ages of sixteen and twenty-one, the court could impose an indeterminate sentence of the State prison type and still commit the offender to the Elmira Reception Center. That is the type of sentence which was imposed upon the petitioner herein. Under this sentence, the petitioner could have been sent from the Reception Center either to Elmira Reformatory or to a State prison; he was sent to the former.

Under the mandate of section 63 of article 3-A of the Correction Law " his parole and discharge shall be governed by the laws applicable to the sentence imposed by the court ". The laws applicable to an indeterminate sentence are found in article 8 of the Correction Law governing the parole and discharge of prisoners serving indeterminate sentences in State prisons. Section 212 of article 8 provides that when a prisoner " sentenced to an indeterminate sentence and confined in a state prison * * * has served a period of time equal to the minimum sentence imposed by the court ", he may be released on parole. This is the section under which the petitioner was originally paroled. Section 219 prescribes the effect of the commission of a felony by a prisoner while on parole " from a state prison ". This is the phrase upon the basis of which the petitioner argues that section 219 does not apply to him but the same phrase appears in section 212 which is the authority under which the petitioner's parole was granted in the first instance. It is thus apparent that by force of section 63, the whole of article 8, including sections 212 and 219, was made applicable to the parole and discharge of prisoners sentenced to an indeterminate term, even though the commitment was required to be made to Elmira Reception Center.

The fact that the petitioner was ultimately transferred from the Reception Center to the Elmira Reformatory is immaterial. The place of confinement does not change the nature of the sentence (*People ex rel. Johnson* v. *Martin,* 283 App. Div. 478, affd. 307 N. Y. 713).

The petitioner cannot escape from the application of section 219 because it uses the words " while on parole from a state prison ". By force of section 63, the provisions applicable to prisoners paroled from a State prison are made applicable to prisoners between sixteen and twenty-one years of age sentenced to an indeterminate term and committed to the Elmira Reception Center, regardless of the place of actual confinement at the time of their release upon parole.

An analogous situation arises in the case of a prisoner under thirty years of age, confined under an indeterminate sentence in a State prison and subsequently transferred by the Commissioner of Correction, in the exercise of his discretion, to a reformatory. The statute provides that in such a case, despite the fact that the prisoner is in a reformatory, he may be paroled and discharged only " in general conformity with the rules governing paroles and discharges of such persons from state

prisons '' (Correction Law, § 293; formerly § 294, renum. and amd. by L. 1954, ch. 803).

The petitioner also places emphasis upon the fact that in 1939 a specific reference was inserted in section 219 to the commission of a felony by a prisoner on parole '' from the Elmira Reformatory '' (L. 1939, ch. 753) and that this reference was subsequently eliminated (L. 1945, ch. 678). Between 1939 and 1945, prisoners who had been directly sentenced to Elmira Reformatory under a sentence of the reformatory type (which was the only type of sentence under which offenders could be directly sentenced to the reformatory) and who were subsequently paroled, were governed by the provisions of section 219 in the event of the commission of a felony while on parole. The elimination of the reference to the Elmira Reformatory had the effect of rendering section 219 inapplicable to such prisoners (*People ex rel. Zakowicki* v. *Morhous,* 285 App. Div. 311; cf. 1945 Atty. Gen. 181). However, this statutory history has no bearing upon the problem here presented. Section 219 is applicable to offenders sentenced under an indeterminate sentence, and transferred from the Reception Center to the Elmira Reformatory, not by force of any express reference to Elmira Reformatory in the statute but by force of section 63 of the Correction Law which makes the parole and discharge of all such prisoners subject to the laws applicable to that type of sentence, regardless of the place in which they may be confined.

We therefore conclude that, although the petitioner was paroled from Elmira Reformatory, the terms of his parole were governed by the statutes applicable to the parole of a prisoner from a State prison and therefore section 219 was applicable to him.

It may be of interest to note that the rules promulgated by the Board of Parole, as amended April 15, 1952, expressly adopt this interpretation of the statute. Subdivision '' n '' of rule 16 reads: '' If a parolee serving an indeterminate or definite prison sentence, regardless of the type of institution from which released, commits a felony while on parole, either in New York State or any other state, he must serve, in a state penal institution, the portion remaining of the maximum term of the sentence on which he was released on parole, from the time of release on parole to the expiration of his maximum sentence.''

Finally, it may be noted that the petitioner's attempt, in this proceeding, to escape from the impact of section 219 of Correction Law has largely become academic because, under the 1954 amendment to section 219, the Parole Board has been authorized,

upon certification of the Prison Board, in effect to release a prisoner from further service of the unexpired term of his first sentence after he " has served five years of delinquent time " by permitting the prisoner to serve " his remaining delinquent time concurrently with the new sentence imposed upon him " (L. 1954, ch. 518). Since the petitioner has served more than five years of delinquent time under section 219, he may, in the discretion of the Prison Board and the Parole Board, be given the benefit of this provision upon an application to the boards at this time.

The order appealed from should be affirmed, without costs.

FOSTER, P. J., BERGAN, COON and ZELLER, JJ., concur.

Order affirmed, without costs.